## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### CASE NO.:  24-12603-HH

**DIMERCO EXPRESS (USA) CORP.,**

**Appellant,**

**v.**

**KENNY FAULK,**

**Appellee.**

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE NORTHERN DISTRICT OF GEORGIA
## CASE NO. 1:21-CV-1850-MLB
## HONORABLE MICHAEL L. BROWN

### INITIAL BRIEF OF APPELLANT

**HOLLAND & KNIGHT LLP**
Cynthia G. Burnside
Nicholas R. Boyd
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
Tel: (404) 817-8500
Fax: (404) 881-0470
cynthia.burnside@hklaw.com
nicholas.boyd@hklaw.com

**HOLLAND & KNIGHT LLP**
Ilene L. Pabian
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
ilene.pabian@hklaw.com

*Counsel for Appellant*

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the Eleventh Circuit, undersigned counsel for Appellant Dimerco Express (USA) Corp. gives notice of the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

Barrett & Farahany, LLC, counsel for Appellee

Boyd, Nicholas R., counsel for Appellant

Brown, Honorable Judge Michael L., United States District Court Judge

Burnside, Cynthia G., counsel for Appellant

Corbitt, Canon T., trial counsel for Appellant

Dimerco Express Corp., related entity of Appellant

Dimerco Express (USA) Corp., Appellant

Eason, Leslie K., trial counsel for Appellant

Farahany, Amanda, counsel for Appellee

Faulk, Kenneth, Appellee

Fielding, James S., trial counsel for Appellant

Gavrilidis, Catherine, trial counsel for Appellee

Glasgow, Julia, trial counsel for Appellant

Gordon Rees Scully Mansukhani, LLP, trial counsel for Appellant

Holland & Knight LLP, counsel for Appellant

Jones, David G., trial counsel for Appellant

Larkins III, Honorable John K., United States Magistrate Judge

Littler Mendelson, P.C., trial counsel for Appellant

Olsen & Brueggemann, PC, trial counsel for Appellant

Pabian, Ilene L., counsel for Appellant

Panter, Zac, trial counsel for Appellee

Peebles, Burton F., trial counsel for Appellant

Polsinelli PC, trial counsel for Appellant

Rollins, Benjamin J., counsel for Appellee

Reid, Patrick J., counsel for Appellee

Roberts, V. Severin, trial counsel for Appellee

Shultz, Chad, trial counsel for Appellant

Stastny, Steven M., trial counsel for Appellant

*/s/ Ilene L. Pabian*
Ilene L. Pabian

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3, Appellant Dimerco Express (USA) Corp. hereby certifies that the following is a full and complete list of all publicly traded companies or corporations that have an interest in the outcome of this appeal:

Dimerco Express Corp.

*/s/ Ilene L. Pabian*
Ilene L. Pabian

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Dimerco Express (USA) Corp. requests oral argument in this matter. The history of error in this case is multi-faceted and overlapping, and although Dimerco has distilled the most significant errors in this brief, the nuances and effect are difficult to fully convey in writing. Oral argument will assist the Court in obtaining a more complete picture of the trial proceedings, allow the Court to secure clarification on the details, if necessary, and provide a valuable opportunity to facilitate the Court's understanding of both the complex factual and procedural background and legal principles at stake.

# TABLE OF CONTENTS

**Page**

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ...........................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS ................................................................... iv

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE...............................................................2

    A.    Nature of the Case ...............................................................2

    B.    Course of Proceedings and Disposition Below .....................................3

    C.    Statement of Facts ................................................................8

    D.    Standard of Review ..............................................................12

SUMMARY OF ARGUMENT ...............................................................14

ARGUMENT ...................................................................................16

I.    PERVASIVE UNCORRECTED COUNSEL MISCONDUCT
ENTITLES DIMERCO TO A NEW TRIAL ...............................................16

    A.    Improper Opening Statement and Closing Argument.........................17

    B.    Improper Examination of Dimerco's Main Witness..........................29

    C.    Other Improper Trial Tactics................................................33

    D.    The Effect of Counsel's Misconduct....................................34

II.    MULTIPLE EVIDENTIARY ERRORS WARRANT A NEW TRIAL ......34

    A.    Exclusion of Faulk's 2019 Arrest and Incarceration .........................35

**TABLE OF CONTENTS**

**Page**

B.    Exclusion of DX-17 Related to Faulk's 2014 Aggravated
Assault Charge ......................................................................41

III.    CUMULATIVE ERROR REQUIRED A NEW TRIAL .............................43

IV.    FAULK'S    DAMAGE    AWARDS    WERE    LEGALLY
IMPERMISSIBLE....................................................................44

A.    The Excessive Emotional Distress Award Lacked Evidentiary
Support .................................................................................45

B.    The Exorbitant Punitive Damage Award Was Unconstitutional ........48

1.    The Reprehensibility of Dimerco's Conduct is Low
............................................................................48

2.    The Ratio of Punitive to Compensatory Damages is
Too High .......................................................................52

3.    The  Punitive  Award  Greatly  Exceeds  Analogous
Civil Penalties ............................................................57

IV.    FAULK'S ATTORNEYS' FEE AWARD SHOULD BE VACATED ........58

CONCLUSION ....................................................................................58

CERTIFICATE OF COMPLIANCE ............................................................59

CERTIFICATE OF SERVICE ...................................................................59

## <u>TABLE OF CITATIONS</u>

**CASES**                                                                    **Page**

*Akouri v. State of Fla. Dep't of Transp.*,
    408 F.3d 1338 (11th Cir. 2005) ...........................................................39, 46

\* *Allstate Ins. Co. v. James*,
    845 F.2d 315 (11th Cir. 1988) ...............................................................*passim*

*Bains LLC v. Arco Prods. Co.*,
    405 F.3d 764 (9th Cir. 2005) ........................................................................56

\* *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
    955 F.2d 1467 (11th Cir. 1992) .....................................................16, 28, 29, 34

*Barber v. City of Chicago*,
    725 F.3d 702 (7th Cir. 2013) ...................................................................37, 40

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996).................................................................................*passim*

*Bogle v. McClure*,
    332 F.3d 1347 (11th Cir. 2003) ....................................................................47

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) ....................................................................18

*Bowles v. Osmose Utils. Servs., Inc.*,
    443 F.3d 671 (8th Cir. 2006) ........................................................................56

*Brady v. Fort Bend Cnty.*,
    145 F.3d 691 (5th Cir. 1998) ...................................................................45, 47

\* *Bryan v. Jones*,
    519 F.2d 44 (5th Cir. 1975),
    *reversed on other grounds on reh'g*,
    530 F.2d 1210 (5th Cir. 1976) (en banc) .....................................................39, 40

*Bryant v. Jeffrey Sand Co.*,
    919 F.3d 520 (8th Cir. 2019) ........................................................................56

iv

## TABLE OF CITATIONS

**CASES**                                                                                                    **Page**

\* *Cephus v. CSX Transp., Inc.*,
    771 Fed. App'x 883 (11th Cir. 2019)...........................................16, 25, 33, 34

\* *Christopher v. Florida*,
    449 F.3d 1360 (11th Cir. 2006) ...............................................................*passim*

*Copley v. BAX Global, Inc.*,
    97 F. Supp. 2d 1164 (S.D. Fla. 2000)...............................................................57

*Cote v. Phillip Morris, USA, Inc.*,
    985 F.3d 840 (11th Cir. 2021) .........................................................................13

*Cote v. R.J. Reynolds Tobacco Co.*,
    909 F.3d 1094 (11th Cir. 2018) ...............................................................18, 28

*Deas v. PACCAR, Inc.*,
    775 F.3d 1498 (11th Cir. 1985) .......................................................................33

*Dimanche v. Mass. Bay Transp. Auth.*,
    893 F.3d 1 (1st Cir. 2018)................................................................................54

*Doe v. Busbee*,
    684 F.2d 1375 (11th Cir. 1982) .......................................................................58

*EEOC v. W&O, Inc.*,
    213 F.3d 600 (11th Cir. 2000) .........................................................................56

*Evers v. Equifax, Inc.*,
    650 F.2d 793 (5th Cir. 1981) ...........................................................................18

*Forshee v. Waterloo Indus., Inc.*,
    178 F.3d 527 (8th Cir. 1999) ...........................................................................47

*Goldsmith v. Bagby Elevator Co.*,
    513 F.3d 1261 (11th Cir. 2008) ...............................................................49, 56

*Highland Consulting Grp., Inc. v. Minjares*,
    74 F.4th 1352 (11th Cir. 2023) .......................................................................12

*Kerrivan v. R.J. Reynolds Tobacco Co.*,
    953 F.3d 1196 (11th Cir. 2020) .........................................................13, 44, 48

## TABLE OF CITATIONS

**CASES**                                               **Page**

*Lambert v. Fulton Cnty., Ga.*,
   253 F.3d 588 (11th Cir. 2001) ........................................................ 13

*McLean v. GMAC Mortg. Corp.*,
   398 Fed. App'x 467 (11th Cir. 2010) ........................................ 45, 47

* *McWhorter v. City of Birmingham*,
   906 F.2d 674 (11th Cir. 1990) .................................................. 18, 27

*Moore v. Sears, Roebuck & Co.*,
   683 F.2d 1321 (11th Cir. 1982) ..................................................... 43

*Morris v. Sec'y Dep't of Corr.*,
   677 F.3d 1117 (11th Cir. 2012) ..................................................... 44

*Peat, Inc. v. Vanguard Research, Inc.*,
   378 F.3d 1154 (11th Cir. 2004) ........................................ 13, 34, 43

*Price v. City of Charlotte*,
   93 F.3d 1241 (4th Cir. 1996) ......................................................... 45

*Proctor v. Fluor Enters., Inc.*,
   494 F.3d 1337 (11th Cir. 2007) ............................................... 34, 41

*Quercia v. United States*,
   289 U.S. 466 (1933)................................................................. 24, 33

*Saccameno v. U.S. Bank Nat'l Ass'n*,
   943 F.3d 1071 (7th Cir. 2019) ....................................................... 54

*Schandelmeier-Bartels v. Chicago Park Dist.*,
   634 F.3d 372 (7th Cir. 2011) ......................................................... 46

*Sepulveda v. Burnside*,
   432 Fed. App'x 860 (11th Cir. 2011) ........................................... 50

*Sooroojballie v. Port. Auth. of N.Y. & N.J.*,
   816 Fed. App'x 536 (2d Cir. 2020) ............................................... 54

*State Farm Mut. Auto Ins. v. Campbell*,
   538 U.S. 408 (2003)............................................................... *passim*

<u>**TABLE OF CITATIONS**</u>

**CASES**                                            **Page**

*Taylor v. Mentor Worldwide LLC,*
    940 F.3d 582 (11th Cir. 2019) ....................................................13, 26, 43, 46

*Thomas v. iStar Fin., Inc.,*
    652 F.3d 141 (2d Cir. 2011) ..........................................................................53

*U.S. v. Canty,*
    37 F.4th 775 (1st Cir. 2022) ...................................................................26, 28

*U.S. v. Pearson,*
    746 F.2d 787 (11th Cir. 1984) ...............................................................18, 25

*U.S. v. Sanchez,*
    659 F.3d 1252 (9th Cir. 2011) ...............................................................26, 28

*U.S. v. Starks,*
    34 F.4th 1142 (10th Cir. 2022) .............................................................26, 27

*U.S. v. Rozier,*
    598 F.3d 768 (11th Cir. 2010) .....................................................................53

*U.S. v. Weinstein,*
    762 F.2d 1522 (11th Cir. 1985) ...................................................................16

*Vance v. S. Bell Tel. & Tel., Co.,*
    863 F.2d 1503 (11th Cir. 1989),
    *abrogated on other grounds by Harris v. Forklift Sys., Inc.,*
    510 US. 17 (1993)..........................................................................................41

*Vautin v. BY Winddown, Inc.,*
    2024 WL 4297800 (11th Cir. Sept. 26, 2024)..............................................13

*Warren v. Ford Motor Credit Co.,*
    693 F.2d 1373 (11th Cir. 1982) ...................................................................44

*Williams v. ConAgra Poultry Co.,*
    378 F.3d 790 (8th Cir. 2004) .................................................................53, 57

\* *Williams v. First Advantage LNS Screening Solutions Inc.,*
    947 F.3d 735 (11th Cir. 2020) ...........................................................*passim*

# TABLE OF CITATIONS

## CASES                                                                Page

\* *Wilson v. NHB Indus., Inc.,*
219 Fed. App'x 851 (11th Cir. 2007) ......................................................*passim*

*Wilson v. Taylor,*
733 F.2d 1539 (11th Cir. 1984)
*abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist.,*
491 U.S. 701 (1989) ......................................................................................46

## STATUTES

Title 28, United States Code, Section 1291 ..............................................1

Title 42, United States Code, Section 1981a(b)(3)(B) ............................57

## RULES

Rule 4(a)(4)(A), Federal Rule of Appellate Procedure. ..........................1

Rule 803(8)(A), Federal Rule of Evidence. .............................................43

## STATEMENT OF JURISDICTION

This is an appeal of final judgments and incorporated interlocutory rulings of the United States District Court for the Northern District of Georgia. The district court had federal-question jurisdiction of this Section 1981 litigation, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered an amended final judgment on July 10, 2024 (DE#223), and Appellant timely appealed on August 8, 2024 (DE#224). *See* Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF THE ISSUES

1.    Whether Appellee's counsel's misconduct during trial, including opening statements, closing argument, and/or cross-examination of Appellant's corporate representative, warrants a new trial.

2.    Whether the district court's multiple evidentiary errors, including exclusion of a public record of Appellee's 2014 criminal charge and all evidence about his 2019 criminal charges pending during the damages period, warrants a new trial.

3.    Whether cumulative error requires a new trial.

4.    Whether the evidence supported a $300,000 emotional distress award.

5.    Whether the $300,000 emotional distress award and/or the $3,000,000 punitive damages award were the product of passion or prejudice.

1

6. Whether the $3,000,000 punitive damages award was unconstitutionally excessive.

7. The propriety of the award of prevailing-party attorneys' fees.

## STATEMENT OF THE CASE

### A.    Nature of the Case

Appellant/Defendant Dimerco Express (USA) Corp. ("Dimerco"), a 120-employee global freight forwarding company, challenges a $3,390,000 judgment on a jury verdict for Appellee/Plaintiff, Kenny Faulk ("Faulk") in this failure-to-hire case. The suit arose from Dimerco's revocation of Faulk's conditional employment offer after learning of his 2014 aggravated assault charge pled down to a disorderly conduct conviction. Faulk was awarded these extraordinary damages despite ***never working a single day for Dimerco*** and finding gainful employment elsewhere.

Before trial, Faulk's counsel candidly informed the district court: "I hope to impact [the jury's] subconscious and their conscious – in every way that I possibly can to influence them in my client's [favor]." At trial, she pursued this objective relentlessly. Counsel persistently appealed to the jurors' sympathies and stoked their passions during opening, witness examination, and rebuttal closing where she doubled down on an argument designed to recruit the jurors to Faulk's "team," a tactic the court expressly prohibited her from using. Although the court admonished counsel outside the jury's presence, it refused several requests for a curative

2

instruction, citing concerns about potential harm to Faulk. The court also wrongly excluded evidence of Faulk's 2019 rape charges and the public record of his 2014 aggravated assault charge, and then failed to give a curative instruction when Faulk's counsel intentionally misled the jury that the latter did not exist. All of this irreparably undermined the fairness of the proceedings and warranted a new trial.

In seeking to shield Faulk from perceived prejudice, the court instead allowed undue prejudice against Dimerco, as starkly reflected in the jury's excessive verdict awarding $390,000 in compensatory damages and $3,000,000 in punitive damages. The court abused its discretion in denying Dimerco's motion for new trial or remittitur, despite Faulk's counsel's pervasive misconduct, the evidentiary errors, and severe procedural flaws. The court's refusal to act left a verdict driven by inflamed jury passions, resulting in unsupported and unconstitutionally excessive damages. This Court must now intervene to rectify these profound injustices.

## B.    Course of Proceedings and Disposition Below

In May 2021, Faulk filed a Section 1981 racial discrimination suit against Dimerco, stemming from the rescission of his conditional job offer for an account-executive position in September 2019, and seeking lost wages, emotional distress

damages, and punitive damages. (DE#1; DE#10).[1] Dimerco answered, asserting it had legitimate, non-discriminatory reasons for revoking Faulk's offer. (DE#12:2).

During discovery, Dimerco learned that Faulk, in addition to his 2014 criminal conviction, was arrested again in July 2019, just weeks before applying to Dimerco. He was incarcerated for 16 days on charges of sexual battery (rape), aggravated assault-strangulation, and domestic violence-family. (DE#108:1 n.1, 6; DE#136:2-3; DE#143:43-44; DE#168:242-44; DE#237:45; USCA11#23:114). These 2019 charges were a focal point before trial, with Faulk moving to exclude mention of them as irrelevant and unduly prejudicial. (DE#101; DE#112; DE#128; DE#236:13-16). Dimerco argued this evidence was essential for the jury to evaluate Faulk's emotional distress damages, as the charges were pending throughout the entire damages period. (DE#108; DE#130).

At a September 2023 hearing, the court sided with Dimerco, finding Faulk's 2019 arrest and prosecution for rape and other charges were relevant to his emotional distress claim, a point his counsel conceded. (DE#234:20, 24-26). Denying Faulk's

---

[1] Record cites are to "DE#[docket number]:[page]," including the trial transcripts (found in DE#237, DE#168, DE#169-2, DE#170). Citations to the documents attached to the December 5, 2024 joint motion to supplement the record (which remains pending), namely (1) transcripts of video depositions excerpts of Cathy Chou and Renee Howard played at trial but not contemporaneously transcribed; and (2) three Dimerco trial exhibits excluded by the district court (and not included in the record), are "USCA11#23:[page number]."

limine motion, the court found the charges provided necessary "context" for assessing alternative causes of distress and that their "strong probative value" outweighed potential prejudice. (DE#136:5-6). But at trial, the court abruptly reversed course and excluded this evidence. (DE#169-2:93-94).

Faulk's counsel's misconduct permeated the entire four-day jury trial, starting with an impermissible opening argument where she told jurors that Faulk "took the torch" to "hand it over" to them. (DE#237:270). The court admonished her outside the jury's ears, stating the argument was "not right" because Faulk "is not passing the torch to teammates on the jury," and prohibited such argument during closing arguments. (DE#237:294-95). Yet, in her rebuttal closing, counsel stated Faulk "carried the mantle … to this courtroom … to bring it and to turn it over to you." (DE#169-2:362). The court found this argument "aggressively and knowingly" violated its instructions but declined to issue a curative instruction, fearing it "could prejudice the plaintiff." (DE#169-2:369-70). Acknowledging its inaction, the court remarked: "for about the fifth time, I'm going to allow Ms. Farahany to disregard my instructions, to act inappropriately, with zero ramifications. I suppose just rewarding bad behavior." (DE#169-2:370). Faulk's counsel's misconduct led the court to consider declaring a mistrial *sua sponte* during jury deliberations, citing the "intentionality" of the violation, the resulting "unfairness," and the "confus[ion]" caused by asking the jury to join Faulk's "team" and "align themselves outside of

their zone of pure independence." (DE#170:11, 16-17). This prompted another curative instruction request by Dimerco that went unheeded. (DE#170:16).

Further, as trial began, Faulk's counsel conceded she would not challenge the admission of a critical piece of evidence—a public record from the Georgia court system alerting Dimerco to Faulk's 2014 aggravated assault arrest—and the court ruled the document would be admissible if the proper foundation was established. (DE#237:52). However, when Dimerco sought to introduce the evidence through Dimerco's corporate representative, who relied on the record in revoking Faulk's job offer, Faulk's counsel objected and successfully persuaded the court to reverse its earlier ruling. (DE#169-2:255-60). During cross-examination of that witness, counsel then improperly asserted that the excluded document did not exist. (DE#169-2:276-77). The court's attempt to alleviate the harm by telling the jury "the only thing that's in evidence is the evidence," only reinforced the misimpression that the document was non-existent. (DE#169-2:277). These were among the most egregious of Faulk's counsel's trial tactics designed to mislead and inflame the jury. As the court itself noted, she repeatedly argued over rulings, made speaking objections, and coached Faulk during cross-examination through facial expressions and head nodding—all in view of the jury. (DE#168:48-58, 78-79; DE#169-2:63-65, 69, 114-15, 176-77, 193, 195-97, 254; DE#170:59-60, 64-71, 76-78, 82-84;

DE#220:4). While the court admonished counsel multiple times, it did so outside the jury's presence. (DE#170:68) ("I always waited until the jury was gone ….").

Unsurprisingly, the jury found Dimerco liable for racial discrimination and awarded Faulk—who never worked a single day for Dimerco—$90,000 in lost wages, $150,000 for past emotional distress damages, $150,000 for future emotional distress damages, and $3,000,000 in punitive damages. (DE#160; DE#170:100-101).

Dimerco filed post-trial motions for new trial and, alternatively, relief from judgment and remittitur based on Faulk's counsel's intentional misconduct, evidentiary errors, cumulative error, and unsupported and unconstitutional damage awards. (DE#175). The court held a hearing and the parties submitted supplemental briefing on the *Gore* punitive damage factors. (DE#215; DE#218-1; DE#219-1). Two months later, the court denied Dimerco's motions. (DE#220).

Despite pointing to at least 10 instances of Faulk's counsel's willful "misconduct" and "inappropriate behavior"—including repeatedly violating and ignoring its instructions and misleading the jury—the court concluded there was no impact on the jury that warranted a new trial, citing its admonishments outside the jury's presence and its standard jury instruction that counsel's statements and arguments are not evidence. (DE#220:4-13). The court also defended its reversal of its pretrial ruling on Faulk's 2019 rape charge, now finding the risk of unfair

prejudice outweighed its probative value. (DE#220:16-29). Finally, it left intact the compensatory and punitive damage awards, deeming the 7.69:1 punitive-to-compensatory damages ratio close to, but not beyond, the constitutional limit. (DE#220:34-52). The court entered an amended final judgment for $3,390,000 plus interest and awarded Faulk $380,252.50 in prevailing-party attorneys' fees and $25,968.28 in costs. (DE#221; DE#222; DE#223). Dimerco timely appealed. (DE#224).

## C.    Statement of Facts

In August 2019, Faulk applied for an account-executive position at Dimerco's Atlanta office, stating he was currently employed at Livingston International ("Livingston") but requesting that Dimerco not contact Livingston for a reference. (DE#162-1:1; DE#169-2:87-91). He certified his application answers were "true and complete" and acknowledged that providing "false or misleading information" could result in termination. (DE#162-1:2). After an in-person interview, Sookie Song ("Song"), Dimerco's Atlanta branch manager, and others found Faulk qualified and Song extended a formal job offer on September 16, 2019, with a $90,000 annual salary. (DE#164-42; DE#168:105, 108, 127, 175). The offer letter stated it was "contingent on the successful updated background screening," and Dimerco reserved the right to rescind the offer if the results were unsatisfactory. (DE#164-42:1).

When Dimerco extended Faulk's offer, it was unaware of his troubling history. This included his 2014 felony aggravated assault arrest (later pled to disorderly conduct conviction) (DE#143:41; DE#164-8:4; USCA11#23:108-09), and July 2019 arrest for rape, strangulation, and domestic violence-family leading to his 16-day incarceration. (DE#108:1 n.1, 6; DE#136:2-3; DE#143:43-44; DE#168:242-44; DE#237:45; USCA11#23:114). Faulk concealed his 2019 arrest from Dimerco by falsely claiming he was still employed by Livingston, despite having been terminated in August 2019 for not reporting to work. (DE#143:42-43; DE#162-1; DE#162-2; DE#168:169, 173-74; DE#169-2:88-91, 121-23).[2] He even instructed his attorney to send Livingston a letter seeking severance, falsely attributing his absence to illness and caring for his mother, when he was actually incarcerated. (USCA11#23:116; DE#108:6-7; DE#169-2:41-42, 83-87, 116-18).

After extending Faulk's conditional offer, Song received an ADP background check report ("ADP report") revealing Faulk's 2014 disorderly conduct conviction, as well as a public record docket report from the Fulton County Court website showing Faulk's 2014 conviction was pled down from an aggravated assault charge. (DE#164-8:4; USCA11#23:107-12; DE#169-2:255-56, 264-67, 275).[3] Song

---

[2] Even if hired, this falsehood—once uncovered—would have justified Faulk's immediate termination under his application's terms, which stated that providing "false or misleading information" could result in dismissal. (DE#162-1:2).

[3] Faulk's more recent 2019 criminal offenses did not appear on the ADP report, and Dimerco did not learn of them until later. (DE#108:6).

testified that, upon reviewing these materials, she became deeply concerned about workplace safety. (DE#169-2:265, 267-69, 275-76). The fact that Faulk's job duties would involve client and customer visits heightened her apprehension. (DE#169-2:268-69). Song also feared internal scrutiny for hiring someone with an aggravated assault charge, when safety was a major issue for her and Dimerco. (DE#169-2:269). These safety and liability concerns led Song to rescind Faulk's job offer. (DE#169-2:267-69, 275-76, 280).

The day before the rescission, Song forwarded an excerpt of the ADP report, which showed the disorderly conduct conviction and identified Faulk as "black" (DE#164-8:4), to Renee Howard, Dimerco's human resources manager, copying Herbert Liou, Dimerco's president of U.S. operations (who served in this role for less than one year) and Cathy Chou, Dimerco's Compliance Director, for guidance. (DE#164-7; DE#168:63; DE#169-2:278, 284; USCA11#23:17, 79). According to Howard, although Liou, who retired in 2022, had previously expressed a hiring preference for Caucasians for Dimerco sales positions in certain offices, he instructed Howard to rescind Faulk's offer based on the background check. (DE#164-2; DE#168:62-63, 88-89; USCA11#23:53, 82-84, 87). Howard did so on September 27, 2019 by email, attaching the entire ADP report. (DE#164-36; DE#168:90-91; DE#169-2:44-45; USCA11#23:85, 87). Howard's email invited Faulk to contact Dimerco if he thought the ADP report was inaccurate or he wanted

further clarification (DE#164-36:1; DE#169-2:46). Faulk did not dispute the report and soon found employment elsewhere. (DE#168:176; DE#169-2:45, 48, 50, 167, 183).

In November 2019, Dimerco hired Tanner Thibodeaux, a white candidate with favorable feedback from his meetings with Howard and Dimerco's Dallas Branch Manager, Eric Tsai, for an account-executive position in the Dallas office with a salary $20,000 less than offered to Faulk. (DE#164-9; DE#164-13; DE#233:2; DE#168:91-92; DE#169-2:216-19). Thibodeaux's background check revealed criminal convictions for public indecency and intoxication, disorderly conduct and obstruction from an incident six years earlier when he was 20 and found intoxicated in a compromising position with his girlfriend outside a nightclub. (DE#164-10:4-5; DE#164-32:7). Unlike Faulk, Thibodeaux explained the circumstances to Dimerco and provided a newspaper article documenting the incident. (DE#164-37; DE#233-1; DE#169-2:223-24). After reviewing his explanation and the article, Howard and Tsai consulted Liou, who approved Thibodeaux's employment. (DE#164-4; DE#169-2:223-24).

Howard testified that she questioned the decision to hire Thibodeaux after rescinding the offer to Faulk, and that Liou indicated his preference for Caucasian candidates for this position based on Dimerco's customer demographic. (USCA11#23:85). This contravened Dimerco's race-neutral employment policy.

11

(DE#164-43:7; USCA11#23:22). While Faulk presented additional evidence of Liou's preference for Caucasian candidates, most of it post-dated Faulk's offer recission and related to differently-situated individuals than Faulk. No evidence suggested that Song, who extended Faulk's offer, shared Liou's views, and Song testified that Dimerco had hired other black employees, including for account-executive positions. (DE#169-2:269-71, 283-84, 291-92).

Eighteen months after Dimerco rescinded Faulk's offer, Howard, who had left the company, contacted Faulk to tell him that the hiring decision was based on race, prompting him to file suit. (DE#168:200-01; DE#169-2:52-55; DE#1:3-4).

At trial, Faulk testified that his emotional distress stemmed from being thwarted in his career, and when he learned from Howard about Dimerco's alleged discrimination, he felt anger and sadness, calling it the "hardest" and "worst thing." (DE#169-2:52, 56, 59-60, 77). Because the court prevented Dimerco from cross-examining Faulk about his still-pending criminal charges, the jury was left with the impression that the "worst thing" Faulk experienced in April 2021 was Dimerco's alleged discrimination, rather than the unresolved rape charges against him.

## D.    Standard of Review

This Court reviews the denial of a motion for new trial for abuse of discretion. *Highland Consulting Grp., Inc. v. Minjares*, 74 F.4th 1352, 1360 n.3 (11th Cir. 2023). Likewise, evidentiary errors are reviewed for abuse of discretion, and a new

trial is warranted if such an error affected "substantial rights" or caused "substantial prejudice." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). An abuse of discretion arises when the district court's decision relies on a "clearly erroneous finding of fact or an errant conclusion of law or improperly applies the law to the facts." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019).

The denial of remittitur and propriety of the compensatory award are reviewed for abuse of discretion. *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1204 (11th Cir. 2020). This Court reviews *de novo* the propriety of punitive damages (including denial of a renewed motion for judgment as a matter of law) and constitutionality of a punitive award but defers to the district court's factual findings unless clearly erroneous. *Lambert v. Fulton Cnty., Ga.,* 253 F.3d 588, 597 (11th Cir. 2001); *Cote v. Phillip Morris, USA, Inc.,* 985 F.3d 840, 846 (11th Cir. 2021); *Williams v. First Advantage LNS Screening Solutions Inc.*, 947 F.3d 735, 744 (11th Cir. 2020). A factual finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Vautin v. BY Winddown, Inc.,* 2024 WL 4297800, at *2 (11th Cir. Sept. 26, 2024) (cleaned up).

## SUMMARY OF ARGUMENT

The judgment for Faulk cannot stand for multiple reasons. First, the district court improperly left unchecked pervasive and willful misconduct by Faulk's counsel, which infected the entire trial. During rebuttal closing argument, counsel made inflammatory and explicitly prohibited remarks, addressing the jurors as part of Faulk's "team" just before deliberations—a violation the court refused to correct with a curative instruction. Additionally, during her cross-examination of Song, counsel intentionally misled the jury about the evidence, and instead of rectifying these transgressions, the court inadvertently reinforced them. Counsel's calculated misconduct gravely impaired the jury's impartial consideration of the case and resulted in a grossly-inflated verdict—a $3,390,000 award to an individual with a documented violent history who never worked for Dimerco and subsequently obtained other employment. Despite recognizing counsel's behavior as "totally unfair" and in violation of its rulings, the court refused to order a new trial. This constituted an abuse of discretion.

Next, several of the court's evidentiary rulings similarly undermined the trial's fairness and substantially influenced the verdict. The court erroneously excluded evidence of Faulk's 2019 arrest and incarceration, which was irrefutably relevant to his emotional distress claim, as well as the public record of his 2014 aggravated assault charge, which Faulk's counsel had previously conceded was

admissible. These errors were premised on an improper application of the law to the facts, and deprived the jury of critical information, leading to a verdict against the weight of the evidence. The court's refusal to grant a new trial based on these evidentiary errors was also an abuse of discretion.

Cumulatively, the errors deprived Dimerco of a fundamentally fair trial by distorting the jury's understanding of key facts and enabling a verdict based on passion and prejudice.

Finally, the court abused its discretion by denying Dimerco's request to vacate or remit Faulk's damages based on clearly erroneous findings and a mistaken application of the law and erred in allowing the unconstitutional punitive award to stand. Faulk's $300,000 emotional distress award lacked record support and was based solely on his limited testimony about feeling anger, sadness, and frustration over the perceived impact on his career trajectory. The $3,000,000 punitive award was likewise tainted by improper arguments and lacked aggravating factors to support its enormous size. The punitive award also violated due process as it was completely untethered to the alleged conduct's egregiousness and resulting harm.

In light of these copious and cumulative errors, Dimerco is entitled to a new trial on liability and damages, or, at a minimum, elimination or substantial reduction of the excessive damage awards.

## ARGUMENT

## I.    PERVASIVE UNCORRECTED COUNSEL MISCONDUCT ENTITLES DIMERCO TO A NEW TRIAL

The district court abused its discretion in denying Dimerco's motion for new trial due to the persistent, willful and strategic misconduct of Faulk's counsel, which violated the court's orders, tainted the proceedings, and undermined the jury's impartiality. "The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" *BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1474 (11th Cir. 1992) (citations omitted). In reviewing the denial of a new trial based on misconduct, this Court looks to "the entire argument, the context of the remarks, the objection raised, and the curative instruction." *Allstate Ins. Co. v. James,* 845 F.2d 315, 318 (11th Cir. 1988).

Reversal is required when counsel's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial." *U.S. v. Weinstein,* 762 F.2d 1522, 1542 (11th Cir. 1985). This standard is met when misconduct is left unchecked by the presiding judge. *Id.* Indeed, "whether the district court gave a curative instruction is critical to determining if the court abused its discretion in not granting a new trial." *Cephus v. CSX Transp., Inc.,* 771 Fed. App'x 883, 894 (11th Cir. 2019). Where highly inflammatory misconduct occurs and the court refuses to

16

give a curative instruction, a new trial is essential. *Allstate,* 845 F.2d at 319-20;

*Wilson v. NHB Indus., Inc.*, 219 Fed. App'x 851, 853 (11th Cir. 2007).

That is precisely what occurred here. Faulk's counsel engaged in repeated and deliberate misconduct throughout the trial. She made highly inflammatory and legally impermissible remarks designed to inflame the jury's passions and "recruit" them to Faulk's "team" during opening statement and then reiterated that improper argument during rebuttal closing in direct violation of the court's explicit order. Counsel also misled the jury about critical defense evidence during her cross-examination of Dimerco's key witness. These intentional and prejudicial actions, either left unaddressed by curative instructions or made worse by the court's ineffective comments, gravely impaired the jury's ability to fairly and dispassionately consider the case. Counsel's misconduct deprived Dimerco of a fair trial and produced an unsupported, excessive verdict. A new trial is warranted to ensure justice is served and that the verdict is based on a fair and impartial consideration of the evidence.

## A.    Improper Opening Statement and Closing Argument

During both opening and closing arguments, Faulk's counsel improperly sought to enlist the jurors as Faulk's teammates in a metaphorical relay race. In opening, counsel argued that Faulk "took the torch" from Howard and would "hand it over" to the jury. (DE#237:270). After being admonished and warned not to repeat

that type of argument in closing (DE#237:294-97), counsel again used the metaphor in her rebuttal closing, telling the jury that Faulk "carried the mantle" passed to him by Howard and would now "turn it over" to them. (DE#169-2:362). Faulk's counsel's inflammatory rhetoric was allowed without any real consequence, and the court denied Dimerco's requests for a curative instruction. (DE#169-2:366, 369-70; DE#170:15-16).

Appellate courts, including this one, have consistently held that new trials are warranted for improper closing arguments where a party is severely prejudiced. *See, e.g., McWhorter v. City of Birmingham,* 906 F.2d 674, 677 (11th Cir. 1990); *Christopher v. Florida*, 449 F.3d 1360, 1367-68 (11th Cir. 2006); *Evers v. Equifax, Inc.,* 650 F.2d 793, 797 (5th Cir. 1981).[4] The edict is clear: counsel's remarks must remain within the bounds of the evidence and the inferences it supports "to assist the jury in analyzing, evaluating, and applying the evidence." *U.S. v. Pearson,* 746 F.2d 787, 796 (11th Cir. 1984). Closing remarks that are "plainly unwarranted and clearly injurious" justify a new trial. *Cote v. R.J. Reynolds Tobacco Co.,* 909 F.3d 1094, 1104 (11th Cir. 2018) (cleaned up).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), this Court adopted as binding precedent all decisions of the Fifth Circuit before September 30, 1981.

Faulk's counsel and the district court failed to adhere to these legal standards.

Faulk's counsel's persistent misconduct went practically unchecked, particularly in

the jury's eyes, starting with improper remarks during opening statements:

> You're also going to hear from [Plaintiff] about *… [w]hy he took the torch from Renee [Howard], who gave up, to be able to hand it over to you.* And he's going to tell you how hard it is to fight against corporate power.

(DE#237:270) (emphasis added). The court scolded Faulk's counsel, stating: "That's

not appropriate argument." (*Id.*). Undeterred, Faulk's counsel echoed the same

"team spirit" rhetoric at the end of her opening:

> Listen to see if they take any responsibility for these actions .... And what it will take from the eight of you in this box to make them hear you.
> Let's get to work.

(DE#237:274).

Outside the jury's presence, the court reprimanded Faulk's counsel for

attempting to recruit the jurors as Faulk's "teammates," explicitly instructing her not

to make such arguments again in closing:

> COURT: I also think you have to be careful when you talk about passing the torch. [Plaintiff] is *not passing the torch to teammates on the jury*. [Plaintiff] is presenting his case to an impartial jury, who ought to be asked to follow the law impartially....
>
> *But they are not teammates in a relay race to accept a torch from anybody.*
>
> …

19

FARAHANY: I understand that that – *you're saying that for both closing or you're saying that that was inappropriate for opening*?

COURT:  *I think it's both*.

FARAHANY: Okay.

…

COURT: … All that [Plaintiff] can do is present the facts to the impartial jury. But what he's not doing is giving it to a teammate to carry something for him. *They are not his teammate. The jury is not.*

...

And I try to police these things to that level, because those types of arguments are -- *both of these are meant or could be seen to try to gain some type of unfair advantage* in a hard to quantify way.

…

*[D]on't try to suggest some type of team interaction here that goes from a witness to another party to the jury.* That's not their role and I don't want to confuse that.

*Everybody understand*?

FARAHANY: *I understand*.

(DE#237:294-97) (emphasis added).

Despite this clear warning, Faulk's counsel violated the court's ruling during her rebuttal closing argument, saying:

*[Plaintiff], he carried the mantle, and he brought it from Renee [Howard] to him. And he picked it up. And he brought it here* so that he could come all the way to this courtroom and to bring it and *to turn it over to you*.

20

(DE#169-2:362) (emphasis added). Dimerco's counsel immediately objected, and the court said "I'm going to strike that last statement." (*Id.*). However, Faulk's counsel persisted, once again violating the same prior directive: "It is up to you to give a verdict in this case. It is up to you to bring justice in this courtroom, in this country *and in this community*. Thank you." (DE#169-2:362-63) (emphasis added).

After dismissing the jury, the court disregarded Dimerco's initial request for a curative instruction (DE#169-2:366), and instead expressed its astonishment at Faulk's counsel's blatant disregard for its earlier ruling:

> COURT: I think everybody in this courtroom knew how far plaintiff could not go. I think the other folks on your team knew that—don't you recall what I said after your opening?
>
> FARAHANY: Your Honor, I do, but there's a difference when I'm handing it to the jury. In fact –
>
> COURT: No. No, ma'am. *They're not part of the team to pick up a torch and carry it on.*
>
> FARAHANY: I didn't say that.
>
> COURT: And *I cannot imagine why you would argue that in the light of what I told you.*
>
> …
>
> FARAHANY: Your Honor, I did not use the torch. I said he picked up the mantle. And I said it's up to you now to return a verdict. He picked up the mantle, he brought it to this courtroom. And now it is up to you to return the verdict.
>
> …

21

> COURT: ***It is not up to them to pick up a torch or a mantle or whatever you want to call it from your client.*** It is their job to be impartial. To be a third-party decider. And to decide based upon facts and law .... ***I gave you an instruction. And there's no doubt in my mind that you knew that instruction. And you ran right through it….***
>
> I don't care if you disagree with me. If you disagree with me, your avenue is to go to the Eleventh Circuit. ***Your avenue is not to disregard what I say and to change words or diction to get the same exact concept.*** Do you really think – was it in any way surprising to you that they reacted and that I reacted the way I did?

(DE#169-2:366-68) (emphasis added). Faulk's counsel once more insisted that her actions did not violate the prior ruling, prompting Dimerco's counsel to again request a curative instruction. (DE#169-2:368-69). The court declined, stating:

> I think – I'm not going to do anything. I think the jury got from your objection and my sustaining the point that it wasn't okay.
>
> And I think to do anything more at this point in the case would be improper and ***could prejudice the plaintiff.***

(DE#169-2:369-70) (emphasis added).

In doing so, the court recognized it was permitting Faulk's counsel to repeatedly ignore its instructions with impunity:

> ***And for about the fifth time, I'm going to allow Ms. Farahany to disregard my instructions, to act inappropriately, with zero ramifications. I suppose just rewarding bad behavior.***

(DE#169-2:370) (emphasis added). It further admitted that counsel's actions were a flagrant and intentional transgression that was entirely unjust, but he was doing nothing about it:

But if the defendant wants to bring it up on appeal, ***it's my opinion that she completely violated my rule from opening statement. It's my opinion that she did so aggressively and knowingly. And I don't think that there is any way around that.***

…

But I think to do more would be inappropriate. But it is what it is. ***It is in the record there. And it was, as I've said before, in my opinion, blatant and wrong. And should never have happened.*** We can strike strong blows. We can strike important blows. ***But we ought never try to strike unfair blows. And I think that's what that was.***

(DE#169-2:370-72) (emphasis added).

Tellingly, the court considered declaring a mistrial *sua sponte* during jury deliberations due to, in the court's own words, Faulk's counsel's "egregious" and "unfair" conduct during closing. (DE#170:10-18, 20-24). It reminded counsel that the jury's responsibility was to apply the law impartially, emphasizing that they were to treat both the plaintiff and the defendant equally, regardless of the claims. (DE#170:12). Despite recognizing the seriousness of Faulk's counsel's behavior, the court paradoxically concluded it did not impair the jury's ability to fairly evaluate the case, asserting that only "fairly egregious statements" would affect the jury, and in its view, the misconduct here did not rise to that level. (DE#170:15-16). Yet, in the very same remarks, the court acknowledged the "egregiousness" of counsel's conduct. (DE#170:17).

This contradiction highlights the flaw in the court's decision to deny a new trial. The severity of the conduct, coupled with the court's own recognition of its

impact, clearly demonstrates the need for a new trial to ensure fairness and impartiality. In *Allstate,* 845 F.2d at 318, an insurance case, plaintiff's counsel remarked during his closing argument that if the jurors had read about the facts of the case in the paper they would say "[w]hy didn't somebody do something about this? That's why my insurance premiums are so high." Counsel then appealed to the jury to do something about it. *Id.* This Court concluded that the statement could impair the jury's dispassionate consideration of the case "by implying a basis for the verdict other than the evidence presented." *Id.* at 319. Counsel's comments, "in effect, identified the jurors with the group of persons who might be adversely affected by a decision for [the plaintiff]." *Id.* Further, this Court emphasized that "[c]ounsel's argument was amplified by the court's denial of the appellants' objection and refusal to instruct the jury." *Id.* The trial judge's influence on the jury is "'necessarily and properly of great weight'" and even the judge's "'lightest word or intimation …. may prove controlling.'" *Id.* (quoting *Quercia v. United States*, 289 U.S. 466, 470 (1933)). Most pertinent here, the court's "refusal to limit [counsel's misconduct's] impact through an instruction heightens the possibility that a jury will be persuaded by an improper tone or suggestion within those comments." *Allstate,* 845 F.2d at 319. This Court determined that the district court reversibly erred in refusing to give a limiting instruction and reversed for a new trial. *Id.* at 320-21; *accord Wilson*, 219 Fed. App'x at 853-54 (district court abused its discretion in

24

failing to sustain objection to improper closing remarks and in failing to give curative instruction).

The district court here erroneously allowed Faulk's counsel to deliver improper and inflammatory rebuttal closing remarks without consequence. *Pearson,* 746 F.2d at 796. Counsel invited the jury to join Faulk's "team," a tactic beyond the permissible scope of closing argument, which should focus on evidence, not inflaming bias. *Id.* Instead of taking immediate corrective measures, the court denied Dimerco's requests for a curative instruction. (DE#169-2:366, 369-70; DE#170:15-16). "[W]hether the district court gave a curative instruction [to improper closing argument] is critical to determining if the court abused its discretion in not granting a new trial." *Cephus*, 771 Fed. App'x at 894. By failing to remedy the remarks, the court effectively "gave the imprimatur of correctness" to them, heightening the chance the jury was influenced by them.. *Wilson,* 219 Fed. App'x at 853 (citing *Allstate*).

The court's reliance, in denying Dimerco's motion for new trial based on these comments, on its generic jury instructions—that counsel's arguments and statements are not evidence—was entirely inadequate to mitigate the severe prejudice caused by the improper closing argument. (DE#220:9). These instructions, given on the first and third day of trial and not specifically addressed to the ensuing improper remarks, failed to neutralize their harmful impact. (DE#237:236; DE#169-2:300-01;

25

DE#220:9). Courts have consistently held that generalized instructions, especially when untethered to the specific misconduct and which fail to directly address the specific improper comments and are not delivered *immediately after* it occurs, are insufficient to cure prejudice. *See, e.g., U.S. v. Canty,* 37 F.4th 775, 792-93 (1st Cir. 2022) (generalized instructions about counsel's arguments not being evidence inadequate to counter improper arguments); *U.S. v. Sanchez,* 659 F.3d 1252, 1258-60 (9th Cir. 2011) (standard instruction repeated twice that lawyer's statements are not evidence failed to "neutralize" prejudicial effect of improper rebuttal argument). By finding its general instructions sufficient, the court misapplied well-established law demanding that curative measures be both timely and specific to the offending comments to undo the harm. This misapplication of the law constituted an abuse of discretion. *Taylor*, 940 F.3d at 593.

The timing of counsel's wrongful conduct also "magnif[ied] its prejudicial effect." *U.S. v. Starks,* 34 F.4th 1142, 1165 (10th Cir. 2022). This misconduct occurred during rebuttal closing, after the jury was instructed, denying Dimerco the chance to respond and ensuring this "improper suggestion [was] foremost in the jurors' mind as they began their deliberations." *Allstate,* 845 F.2d at 319; *accord Wilson*, 219 Fed. App'x at 853 (improper closing argument particularly likely to influence jury when given after instructions and during rebuttal leaving defense counsel unable to respond). Improper remarks at such critical junctures can have an

outsized impact on the jury's decision-making as they did here. *Starks,* 34 F.4th at 1165.

Faulk's counsel's conduct was particularly egregious because it violated the court's explicit directives. This Court has consistently condemned defying court rulings. In *McWhorter,* 906 F.2d at 677-78, this Court held that a new trial was warranted where counsel argued a theory the district court had specifically prohibited. Similarly, in *Christopher*, 449 F.3d at 1367-68, citing *McWhorter,* this Court affirmed a new trial where closing arguments contravened the court's prior ruling, prejudicing the defendants' substantial rights and undermining the court's authority.[5]

Finally, the jury's excessive verdict—including $390,000 for compensatory distress and $3,000,000 for punitive damages—highlights the prejudicial impact of counsel's misconduct. *See id.* at 1368 n.11 ("We see the jury's award of excessive damages as proof that Plaintiff's counsel's misconduct probably influenced the jury."). From the outset, Faulk's counsel explicitly stated her intent to "impact [the jury's] subconscious and their conscious – in every way" to favor Faulk. (DE#234:76). The outcome—an exorbitant award for an individual who never

---

[5] In *McWhorter,* 906 F.2d at 677-78, and *Christopher*, 449 F.3d at 1366, unlike this case, no objection to counsel's improper closing arguments was made, but this Court still affirmed the grant of a new trial to vindicate the court's authority and protect the interests of substantial justice.

worked for Dimerco, had a criminal record, and (as the court saw it) provided "very, very narrow" testimony on emotional distress (DE#169-2:101)—shows the remarks had their intended effect—successfully inflaming the jury's passions and vitiating the fairness of the proceedings. *See id.* at 1368 (grossly excessive verdict swayed by passion warrants a new trial).

Thus, the district court's failure to give a curative instruction after the improper rebuttal remarks, coupled with its disregard of the misconduct's prejudicial impact, constituted an abuse of discretion warranting a new trial. *See Wilson*, 219 Fed. App'x at 853-54 (reversing denial of new trial based on court's refusal to give curative instruction addressed to improper rebuttal closing argument on integral issue); *Allstate,* 845 F.2d at 319-20 (reversing denial of new trial when closing remarks implied basis for verdict other than evidence presented and court refused to give curative instruction); *see also Canty*, 37 F.4th at 793; *Sanchez,* 659 F.3d at 1258. Faulk's counsel's closing remarks, designed to inflame the jury's passions, "[gravely] impair[ed] ... the [jury's] calm and dispassionate consideration of the case." *BankAtlantic,* 955 F.2d at 1474. Her misconduct, "especially without a curative instruction, cast an impermissible taint over the jury's verdict." *Wilson,* 219 Fed. App'x at 853-54. The resulting liability finding and excessive verdict further confirms the remarks were "plainly unwarranted and clearly injurious." *Cote*, 909

F.3d at 1104 (cleaned up). To preserve the fairness of the proceedings and protect the judicial process, a new trial on all issues is essential.

### B.    Improper Examination of Dimerco's Main Witness

Faulk's counsel's improper cross-examination of Dimerco's corporate representative, Song, distorted the evidence and left the jury with a false impression of key facts. The court itself acknowledged the unfair conduct, noting it misled the jury by depriving them of a full understanding of the evidence, yet it reinforced the false impression instead of correcting it. This misconduct, and the court's ineffective instruction, also justify a new trial as they gravely impaired the jury's impartial evaluation of the case. *BankAtlantic,* 955 F.2d at 1474.

Defendant's Exhibit 17 ("DX-17") was a Fulton County court public record revealing that Faulk's 2014 misdemeanor conviction for disorderly conduct was pled down from an original charge of felony aggravated assault. (USCA11#23:109). Because Song reviewed DX-17 along with the ADP report showing the disorderly conduct conviction, prompting her revocation of Faulk's offer (DE#169-2:255-56, 264-67, 275),[6] Dimerco intended to introduce DX-17 to demonstrate its non-discriminatory basis for revoking the offer. (DE#169-2:258-62). At the start of the trial, Faulk's counsel agreed to DX-17's authenticity and admissibility as a "business

---

[6] The date notation at the bottom on DX-17 showing the document was accessed on "9/26/19" is fully consistent with Song's testimony that she relied on DX-17 in deciding to rescind Faulk's offer, which occurred the next day. (DE#164-36).

record.," and the court ruled it would be admitted if Song testified to relying on it during the hiring process. (DE#237:46-53).

During her direct examination, Song testified that she reviewed materials beyond Faulk's ADP background check, including DX-17, after extending his conditional job offer. (DE#169-2:255-56). However, when Dimerco's counsel asked her to identify those materials, Faulk's counsel—contradicting her earlier agreement—objected on hearsay grounds, asserting "[t]here's no document that they're providing that has shown this." (DE#169-2:256). After the jurors exited, Dimerco's counsel confirmed that DX-17 was produced during discovery, and that Song would testify she reviewed and relied on it in deciding to rescind Faulk's offer due to the aggravated assault charge. (DE#169-2:256-60). Despite this, the court inexplicably reversed its prior position and refused to admit this public record, citing unspecified inadmissible content ("it has a lot of other stuff"). (DE#169-2:256-63).

Notwithstanding the erroneous exclusion of DX-17 (discussed *infra* at 41-43), Song was permitted to testify about the information she considered from it. She explained that learning of Faulk's original aggravated assault charge raised serious concerns about workplace safety and hiring risks, especially for a client-facing role. (DE#169-2:265, 267-69, 275-76). These concerns influenced her decision to rescind Faulk's offer. (DE#169-2:267-69, 275-76, 280).

During Song's cross-examination, knowing that the court had just excluded DX-17 **based on her objection** (notwithstanding her earlier agreement to its admissibility), Faulk's counsel completely misled the jury, asserting that no document existed to support Song's testimony about the aggravated assault charge influencing her decision:

Q: So you, yourself did not go do additional digging into Faulk's background, right?

A: It's not my—it's not my job to digging out. I can ask them. But I believe I talk to Renee for this one.

Q. **And you have not produced here any place where you're showing that you've gotten another piece of information, right, your lawyer hasn't put it in to show that other than the ADP report, that you received something else, correct**?

STASTNY: Your Honor, objection. It has to do with a ruling. I didn't put it in.

…

COURT: Y'all, we're not going to talk like that in front of the jury. We're going to remind the jury that **the only thing that's in evidence is the evidence…**.

I'm going to sustain the objection for a different reason, in that I don't want you asking a witness to comment on evidence.

(DE#169-2:276-77) (emphasis added).

Although the court sustained Dimerco's objection on other grounds, it failed to clarify to the jury that Faulk's counsel's assertion was false and should be disregarded. Worse, the court's comments unintentionally bolstered counsel's misleading narrative that the excluded DX-17 did not exist. By neglecting to issue a proper curative

instruction, the court reversibly erred, allowing counsel to undermine Song's credibility on the critical issue of whether Dimerco revoked Faulk's offer due to his aggravated assault charge rather than his race, thereby gutting Dimerco's defense.

At the end of trial, outside the jury's presence, the court admonished Faulk's counsel for misleading the jury into believing DX-17 did not exist after securing its exclusion "just moments before." (DE#169-2:295). The court admitted this gave jurors "a false belief that there was no documentation to support [Song's] claim" she had relied on the aggravated assault charge. (*Id.*). Despite later acknowledging that Faulk's counsel's cross-examination of Song was "totally unfair" (DE#220:13), the court misapplied the law on curative instructions by concluding that because Song didn't answer the improper question and the jury was instructed to disregard summaries of evidence, the misconduct did not affect the jury's impartiality. (DE#220:13). These remarks, however, failed to meet the legal standard for curative instructions and left the jury with a distorted view of the facts.

A new trial is warranted when misconduct gives the jury a "distorted, incorrect, or an incomplete view of the operative facts" or when proceedings are disrupted, making a just verdict "difficult or impossible." *Deas v. PACCAR, Inc.*, 775 F.3d 1498, 1504 (11th Cir. 1985) (cleaned up). Here, the misleading assertions by Faulk's counsel, combined with the exclusion of DX-17, distorted the jury's understanding of key facts. *Id.* By failing to correct the misstatements or issue a proper curative

instruction, the court allowed this deception to persist, impairing the jury's ability to impartially consider the case. The trial judge's influence on the jury is "'necessarily and properly of great weight'" and even the judge's "'lightest word or intimation …. may prove controlling.'" *Allstate,* 845 F.2d at 319 (quoting *Quercia*, 289 U.S. at 470). By leaving counsel's misconduct unchecked, the court compounded the harm and made a just verdict "impossible." *Deas,* 775 F.3d at 1504. Its denial of a new trial was therefore an abuse of discretion. *Cephus,* 771 Fed. App'x at 895.

### C.    Other Improper Trial Tactics

As detailed below (DE#175-1:6-7), Faulk's counsel engaged in multiple forms of trial misconduct, including arguing with the court in front of the jury after evidentiary rulings, coaching Faulk during his cross-examination despite the court's instruction, making facial expressions visible to the jury but hidden from Dimerco's counsel, and repeatedly making speaking objections. (*see supra* at 6). This obstructionist behavior compounded the trial's unfairness and further supports the relief requested.

The jury's liability finding against Dimerco, alongside the $3,000,000 punitive damage award and $300,000 emotional distress award, demonstrates that Faulk's counsel's misconduct achieved its intended effect, resulting in a verdict that was "manifestly excessive and swayed by passion." *Christopher,* 449 F.3d at 1368.

Such a grossly excessive award strongly indicates the verdict was influenced by passion and prejudice, warranting a new trial. *Id*.

### D.   The Effect of Counsel's Misconduct

In sum, the court abused its discretion by permitting Faulk's counsel to engage in pervasive misconduct—including improper opening statements, closing arguments and misleading assertions during cross-examination of Dimerco's key witness—without issuing curative instructions to mitigate the harm. *Allstate,* 845 F.2d at 319-20; *Cephus,* 771 Fed. App'x at 895. The jury's findings, particularly its liability determination and punitive damages award, show that these tactics were so prejudicial and inflammatory they tainted the proceedings and "gravely" impaired the jury's "calm and dispassionate consideration of the case." *BankAtlantic,* 955 F.2d at 1474. Dimerco is therefore entitled to a new trial. *Allstate,* 845 F.2d at 319-20.

### II.   MULTIPLE EVIDENTIARY ERRORS WARRANT A NEW TRIAL

A new trial is warranted based on the erroneous exclusion of evidence where the error caused "substantial prejudice to the affected party" (or, stated differently, affected the party's "substantial rights" or caused "substantial injustice"). *Peat*, 378 F.3d at 1162. Such an error occurs when it "probably had a substantial influence on the jury's verdict." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007). "[T]he inquiry is always directed to the same central question – how much of an effect did the improperly… excluded evidence have on the verdict?" *Peat*, 378

F.3d at 1162 (cleaned up). Here, the court's evidentiary errors—individually and collectively—caused "substantial prejudice" to Dimerco as the excluded evidence of Faulk's 2019 arrest and incarceration and of the 2014 aggravated assault arrest would have substantially influenced the jury's verdict. Thus, the court abused its discretion in failing to grant a new trial premised on these evidentiary errors.

## A.    Exclusion of Faulk's 2019 Arrest and Incarceration

The court erred in excluding evidence of Faulk's July 2019 arrest—just weeks before applying to Dimerco—on charges of rape, aggravated assault-strangulation, and domestic violence. (DE#108:6; DE#136:2-3; DE#143:43-44; DE#237:45; DE#168:242-44). He was detained for 16 days without notifying his employer, Livingston, who subsequently terminated him for cause. (DE#108:5-6; DE#143:42-44; DE#162-2). Faulk later had his attorney send a letter to Livingston seeking severance based on the misrepresentation that his absence was due to illness and caring for his mother. (DE#143:43; USCA11#23:116; DE#169-2;84-87, 116-18).[7] At trial, Faulk invoked the Fifth Amendment when questioned (on Dimerco's proffer without the jury present) about these 2019 charges and incarceration and their impact on his emotional state. (DE#169-2:197-203). Before the jury, Faulk admitted to lying to Livingston about his whereabouts and to Dimerco about his employment status,

---

[7] In yet another effort to shield Faulk from any harm, the court excluded this letter (referred to at trial as "the Livingston letter") from evidence. (DE#169-2:91-92, 108, 114; DE#237:54; USCA11#23:116).

but the court prohibited Dimerco from eliciting any testimony about his arrest and incarceration. (DE#168:174; DE#169-2:83-90, 121-23).

Dimerco planned to present evidence of Faulk's 2019 arrest and charges as an alternative cause of his alleged emotional distress after he learned of the alleged discrimination. Faulk moved in limine to exclude this evidence, arguing irrelevance and undue prejudice. (DE#101). But the arrest, incarceration and pending charges were critical to assessing damages because they completely overlapped with his period of alleged emotional distress. (DE#108:7-10). As a compromise, Dimerco suggested introducing evidence of lesser charges (DE#108:10-11), but Faulk argued this would cause the "same" prejudice. (DE#112:6).

During a hearing one month before trial, the court questioned how Faulk's 2019 rape arrest could be irrelevant to his emotional distress claim. (DE#234:24-25). Faulk's counsel conceded relevance, admitting the arrest and its aftermath "could cause emotional distress" and were "ongoing" during the relevant period. (DE#234:26). The court emphasized the "remarkable" impact of such events, noting:

> It seems to me as though this would be relevant to emotional distress. To the extent your client is going to testify that he is upset or injured by the treatment that he had at the hands of the defendant, ***I think the defendant is entitled to put on other things that could have caused that emotional distress.***

(DE#234:28) (emphasis added).

After additional briefing (DE#129; DE#130) and a subsequent hearing (DE#236), where Faulk's counsel again conceded relevance (DE#236:16), the court ruled to admit the pending charges, including rape, citing *Barber v. City of Chicago,* 725 F.3d 702 (7th Cir. 2013). (DE#136:6; DE#230:17). The court found the rape arrest, lengthy incarceration, and related trauma highly probative as necessary "context" for evaluating Faulk's emotional distress claim. (DE#136:5). While acknowledging potential prejudice, the court found the evidence's "strong probative value" outweighed such concerns, as it clarified the causes of Faulk's distress after his job offer was rescinded. (DE#136:5-6). To mitigate prejudice, the court invited Faulk to propose jury instructions and left open the possibility of revisiting the issue if Faulk narrowed his claims at trial. (DE#136:6; DE#230:3, 17-18).

During direct-exam, Faulk conveyed his distress over the setbacks in his career, largely attributing them to Dimerco's decision. (DE#169-2: 52, 56, 59-60, 77). He expressed deep frustration and disappointment, stating, for example, "I mean, I've tried, I've worked so hard in my life. I've worked so hard for this opportunity... [a]nd... put in all the work." (DE#169-2:59-60). "[I]t's been the hardest thing for me." (DE#169-2:77). Reflecting on the impact of these challenges, he also questioned the value of his efforts, asking, "what did I spend all of those years going to college for, ... getting my bachelor's and my master's for what?" (DE#169-2:52-53). Ignoring this testimony, the court abruptly reversed course

during Faulk's cross-exam and excluded any mention of his 2019 arrest (DE#169-2:93-114), finding Faulk had limited his emotional distress claim to the period starting with his discovery of the alleged discrimination. (DE#169-2:94-96, 100-01).[8] Contradicting its earlier ruling and invoking the language of *Barber,* the court determined the charges' prejudicial effect outweighed their now "miniscule" probative value. (DE#169-2:101-02, 105-06). Dimerco proposed a compromise to introduce evidence of the arrest and incarceration without disclosing the nature of the charges. (DE#169-2:97-98, 103-05, 108-09). The court rejected this proposal without discussion. (DE#169-2: 106-07).

The inconsistency was glaring. Previously, the court acknowledged the charges' significant probative value due to their overlap with Faulk's claimed emotional distress period. At trial, however, it excluded key evidence of an alternative stressor—the effect of Faulk's pending felony charges on his career trajectory—leading the jury to believe Dimerco's actions were the sole cause of his emotional suffering. In denying Dimerco's post-trial motion, the court disregarded Faulk's testimony about his career frustrations, which should have opened the door to inquiry about the causes of his emotional distress. Instead, the court concluded: "Put simply, Plaintiff's claim for emotional distress damages was limited to the

---

[8]   The rape and aggravated assault charges were pending against Faulk from his discovery of the alleged discrimination to the conclusion of trial. (DE#136:2-3; DE#160:330).

anger and sadness he experienced from Defendant's assessment of him based on his race." (DE#220:25). The court's finding was erroneous and inconsistent with governing law.

In this Circuit, emotional distress damages require an examination of "the degree of emotional distress, [] the context of the events surrounding the emotional distress, … [and] the nexus between the challenged conduct and the emotional distress." *Akouri v. State of Fla. Dep't of Transp.,* 408 F.3d 1338, 1345 n.5 (11th Cir. 2005) (cleaned up). In *Bryan v. Jones,* 519 F.2d 44, 46 (5th Cir. 1975), *reversed on other grounds on reh'g,* 530 F.2d 1210 (5th Cir. 1976) (en banc), the Fifth Circuit reversed for a new trial after the district court excluded evidence of a plaintiff's prior incarceration as irrelevant to his emotional distress damages. The appellate court emphasized that parties must be allowed to develop "all factual elements" related to damages. *Id.* at 46. It rejected the district court's finding that the plaintiff's testimony limited his damage claim to the mental suffering caused by the knowledge of his wrongful restraint, stressing that the potential causes of emotional distress cannot be "cut so fine." *Id.* This reasoning directly contradicts the district court's decision here to exclude evidence of Faulk's arrest and incarceration.

The district court abused its discretion in erroneously applying and following the Seventh Circuit's *Barber* case instead of binding authority from this Circuit. *Barber*, a civil rights case for false arrest and excessive force, held it was error to

admit evidence of the plaintiff's subsequent arrest and conviction due to its "infinitesimal" probative value on the issue of emotional distress damages. 725 F.3d at 713-15. However, unlike in *Barber,* where the emotional distress claim focused "narrowly" on the plaintiff's specific interactions with the arresting officers and was only "touched on briefly" ("Q: Did this incident cause you any emotional distress?"; "Can you describe that for the jury?") *id.,* Faulk's claimed emotional distress was a theme of his case and his testimony, while brief, broadly addressed ongoing frustration, anger and sadness from perceived career derailment, in addition to the alleged discrimination. (*see supra* at 37-38).[9]

Finally, the court's concerns about the nature of Faulk's 2019 charges did not justify its decision to exclude all evidence about his arrest and incarceration. At a minimum, a sanitized version of this evidence—omitting the nature of the charges—should have been admitted to contextualize Faulk's emotional distress. By barring even this limited evidence, the court deprived Dimerco of the ability to challenge Faulk's damage claim, violating the principle that "all factual elements" related to damages must be fully explored. *Bryan,* 519 F.2d at 46. The exclusion also

---

[9] The court's characterization of Faulk's damages testimony as "very, very narrow" (DE#169-2:101) is further contradicted by the jury's $300,000 emotional distress award—on top of $90,000 in lost wages—for an individual who never worked at Dimerco, failed to question the revocation of his conditional offer at the time, and only learned of the alleged discrimination 18 months later. Moreover, as discussed *infra* at 46-47, this award far exceeds those sustained for more pervasive, long-term discriminatory actions by employers against long-term employees.

significantly affected the damages calculation as this evidence would have mitigated

damages attributed to Dimerco. *See Vance v. S. Bell Tel. & Tel., Co.,* 863 F.2d 1503,

1505 (11th Cir. 1989) (affirming vacatur of $500,000 emotional distress award for

race discrimination lasting over a year, featuring threats with nooses, and resulting

in anxiety attacks and psychiatric and psychological treatment because "other

unpleasant factors in [plaintiff's] life ... almost certainly contributed to her mental

distress"), *abrogated on other grounds by Harris v. Forklift Sys., Inc.,* 510 US. 17

(1993).

Thus, because the court's erroneous exclusion of evidence of Faulk's 2019

arrest and incarceration likely had a substantial impact on the jury's verdict, the court

abused its discretion and Dimerco is entitled to a new trial. *Proctor*, 494 F.3d at

1352; *Peat,* 378 F.3d at 1162.

## B.   Exclusion of DX-17 Related to Faulk's 2014 Aggravated Assault Charge

The court also abused its discretion in excluding DX-17, a public criminal

court record showing Faulk's original 2014 aggravated assault charge.

(USCA11#23:107-12). On the first day of trial, the court confirmed DX-17 would

be admitted if Song testified that she relied on it, and Faulk's counsel agreed there

would be no objection. (DE#237:46-53).[10] Song later testified that, in addition to the

---

[10] When questioning Faulk (before Song testified), Dimerco attempted to inquire
about his original aggravated assault charge. (DE#169-2:128). Faulk objected, and

ADP report, she considered the aggravated assault charge from DX-17 and it was vital to her decision to revoke Faulk's conditional offer as it raised serious concerns about workplace safety and liability due to Faulk's client-facing duties. (DE#169-2:255-56, 264-69, 275-76, 280).

Despite previously conceding to the admissibility of DX-17, Faulk's counsel objected to its admission on hearsay grounds. (DE#169-2:255-56). The court reversibly erred in departing from its earlier ruling and excluding DX-17, citing vague concerns about unspecified inadmissible content ("it has a lot of other stuff") (DE#169-2:260). While the court permitted Song to testify about the document's contents, including the aggravated assault, it had no legally cognizable basis to exclude the exhibit itself from evidence. (DE#169-2:260-65).

---

the court sustained the objection, instructing the jury to disregard counsel's question. (*Id.*). When Dimerco then asked about the disorderly conduct conviction resulting from a plea to a more serious charge, the court again sustained objections to this line of questioning. (DE#169-2:129).

Outside the jury's presence, the court acknowledged the significance of DX-17, noting, "your client [Dimerco] wants to argue that that was the basis for rescinding the offer." (DE#169-2:130). After further discussion (DE#169-2:131-38), the court instructed the jury to disregard any mention of the 2014 charges for the time being, stating: "If it becomes relevant or other facts about it become relevant, I will admit those at that time*. But at this point, I'm telling you to disregard anything you've heard about the charges at all*." (DE#169-2:139) (emphasis added). But, contrary to the court's assurance, it later refused to admit that evidence during Song's testimony despite its unmistakable relevance.

The court acknowledged at trial that DX-17 was "not hearsay" because it was being offered to show what Dimerco relied upon, not for the truth of its contents. (DE#169-2:263). *Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1322 (11th Cir. 1982). Additionally, as a public record, DX-17 fell within the hearsay exception of Federal Rule of Evidence 803(8)(A) and should have been admitted on that basis. In excluding this admissible evidence without legal justification, the court deprived the jury of critical context regarding Dimerco's decision to rescind Faulk's offer due to safety concerns. This exclusion constituted an abuse of discretion, warranting a new trial. *Taylor*, 940 F.3d at 593.

In sum, the court's evidentiary errors, both individually and collectively, resulted in "substantial prejudice" to Dimerco because the excluded evidence would have "significantly impacted" the jury's verdict. *Peat,* 378 F.3d at 1162. Consequently, the court abused its discretion in denying Dimerco a new trial based on these errors. *Id.*

### III.   CUMULATIVE ERROR REQUIRED A NEW TRIAL

If the Court determines the errors above do not individually warrant reversal, Dimerco seeks reversal under the cumulative error doctrine, which allows multiple non-reversible errors to collectively justify a new trial if they undermine the trial's fairness. *Morris v. Sec'y Dep't of Corr.,* 677 F.3d 1117, 1132 (11th Cir. 2012). The

Court evaluates whether the trial was "fundamentally fair" by examining it as a whole. *Id.*

Here, Faulk's counsel's misconduct and improper questioning of Dimerco's key witness, and the court's exclusion of critical defense evidence, among other errors, cumulatively denied Dimerco a fundamentally fair trial. While each error independently justifies a new trial, their combined impact—reflected in the brief deliberations, excessive damages, and focus on punitive damages—demonstrates a verdict tainted by passion and prejudice. Despite acknowledging these pervasive errors, the court failed to act, leaving this Court to address them.

## IV. FAULK'S DAMAGE AWARDS WERE LEGALLY IMPERMISSIBLE

Finally, the damage awards to Faulk were unlawfully excessive, with the compensatory award lacking evidentiary support and the punitive award violating due process. Courts must scrutinize excessive damages and order a new trial or remittitur when warranted. *Warren v. Ford Motor Credit Co.,* 693 F.2d 1373, 1380 (11th Cir. 1982). The district court failed in this duty, allowing unsustainable damage awards to stand, which constituted an abuse of discretion and clear error. *Kerrivan,* 953 F.3d at 1204; *Williams,* 947 F.3d at 751.

### A.    The Excessive Emotional Distress Award Lacked Evidentiary Support

The $300,000 compensatory award for emotional distress, in addition to the $90,000 award for lost pay, was unsupported and excessive. While the court described Faulk's emotional distress claim as "very, very narrow" and based on anger at being judged by his race (DE#169-2:101), it later inconsistently upheld the $300,000 distress award, in addition to $90,000 for lost pay, based on subjective impressions of his demeanor. (DE#220:37). This was error.[11]

Emotional distress damages require specific, demonstrable proof of emotional harm—not mere "conclusory statements." *McLean v. GMAC Mortg. Corp.,* 398 Fed. App'x 467, 471 (11th Cir. 2010) (cleaned up). "Given that 'emotional distress is fraught with vagueness and speculation, and is easily susceptible to fictitious and trivial claims,' [the Court] must 'scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony[.]'" *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 719 (5th Cir. 1998) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250, 1251 (4th Cir. 1996)) (cleaned up).

---

[11] The district court found that Faulk's demeanor "evidenced profound sadness, anguish, and humiliation" at having been denied employment on account of his race (DE#220:37), but "did not suggest" that he experienced malaise or depression (DE#220:25), or that "this discrimination was the worst thing that had ever happened to him in his life." (DE#220:29).

The only support for Faulk's substantial $300,000 award for emotional distress is his own conclusory testimony that he felt "mad" and "upset" upon learning of Dimerco's actions 18 months later, and he was frustrated about the perceived effect on his career trajectory. (DE#169-2:52, 56, 59-60, 77). Faulk did not claim to suffer any long-lasting effects, experience any physical manifestation of emotional distress, or undergo any medical or psychological treatment related to his alleged emotional harm. He immediately obtained another job after Dimerco declined to hire him. (DE#168:176). Without more, the evidence here was insufficient to support a $300,000 emotional distress damages award. *See Akouri*, 408 F.3d at 1345-46 (affirming elimination of $552,000 emotional distress award premised solely on plaintiff's testimony he was rejected based on race for three promotions he deserved without describing any harm arising from discrimination); *Wilson v. Taylor*, 733 F.2d 1539, 1549-50 (11th Cir. 1984) (reducing $100,000 emotional distress award to $10,000 where plaintiff failed to provide evidence of specific physical or psychological harm beyond generalized claims of anger, frustration, and humiliation), *abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989); *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 389 (7th Cir. 2011) (reducing Title VII plaintiff's compensatory damages award from $200,000 to $30,000 because while she was "disturbed," "devastated," and "upset" by her termination, she "did not testify to any lasting emotional or

46

physical effects" and found a new job promptly); *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) (reversing emotional distress damages in sex-discrimination suit where plaintiff suffered no physical injury, underwent no treatment, found new job "almost immediately," and offered no corroboration of any manifestation of distress); *Brady*, 145 F.3d at 719 ("being 'highly upset' … and experiencing 'the worst thing that ever happened to me' … hardly qualify as evidence of demonstrable emotional distress").

The district court's reliance on *Bogle v. McClure,* 332 F.3d 1347 (11th Cir. 2003), to sustain Faulk's award was incongruous given its concomitant finding that *Bogle* is "distinguishable because it involved evidence of a broader impact of race discrimination on the plaintiffs' lives" (DE#220:38-39). Unlike in *Bogle,* where career librarian plaintiffs testified to career-ending racial discrimination by their employer, leading to depression, humiliation, shame, and, in one case, suicidal thoughts, *id.* at 1359, Faulk never worked for Dimerco, immediately obtained alternative employment, provided no evidence of physical or emotional symptoms or treatment, and learned of the alleged discrimination 18 months later. (DE#168:176, 200-01). The court's assertion that Faulk's award was "well below" *Bogl*e's $500,000 reduced award to each librarian fails to justify its excessiveness.

Without demonstrable proof linking Faulk's alleged emotional harm to Dimerco's conduct, the $300,000 damage award is legally unsustainable. *McLean,*

398 Fed. App'x at 471. The court abused its discretion in failing to eliminate or reduce this award. *Kerrivan*, 953 F.3d at 1204.

**B.      The Exorbitant Punitive Damage Award Was Unconstitutional**

Furthermore, the court erred in failing to eliminate or reduce the $3,000,000 punitive damage award, which was infected by Faulk's counsel's misconduct and was so grossly excessive it violated due process. Due process prohibits grossly excessive or arbitrary punitive damage awards, and courts must evaluate due process challenges to such awards using three "guideposts": (1) reprehensibility of the defendant's misconduct; (2) ratio of punitive to compensatory damages; and (3) comparison to penalties in similar cases. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 574-75 (1996); *accord State Farm Mut. Auto Ins. v. Campbell,* 538 U.S. 408, 418 (2003).

Here, these guideposts demonstrate that Dimerco's actions did not warrant punitive damages, let alone such a grossly excessive award. The 7.69:1 punitive-to-compensatory damages ratio exceeds constitutional limits given the circumstances. *Williams*, 947 F.3d at 765–66.

**1.      The Reprehensibility of Dimerco's Conduct is Low**

The dominant consideration in evaluating a punitive damage award is the reprehensibility of the defendant's conduct, which courts assess by considering whether: (1) the harm was physical rather than economic; (2) the conduct showed

indifference to or reckless disregard for health or safety; (3) the victim was financially vulnerable; (4) the actions were repetitive or an isolated incident; and (5) the harm resulted from malice, trickery, or deceit, or mere accident. *State Farm,* 538 U.S. at 419; *Gore,* 517 U.S. at 576-77. "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award." *State Farm,* 538 U.S. at 419. And the court's findings on reprehensibility are reviewed for clear error, which occurs if the finding is "not supported by the record or is contrary to the evidence." *Williams,* 947 F.3d. at 751.

First, Faulk's alleged harm was purely economic and emotional, without evidence of physical harm, medical treatment, or physical manifestations of distress. The district court's reliance on *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1283 (11th Cir. 2008), and *Williams,* 947 F.3d at 751-52, in finding the first factor favors Faulk simply because "he suffered emotional harm" was mistaken. (DE#220:42). Unlike *Goldsmith*, where the plaintiff sought medical attention for emotional distress, and *Williams*, where the plaintiff's distress manifested in physical symptoms, including diminished appetite, insomnia and headaches, Faulk presented no evidence of seeking such treatment or experiencing physical manifestations of his claimed harm. Thus, this factor supports Dimerco.

The court appropriately found the second factor favors Dimerco because its conduct did not endanger health or safety. (DE#220:42). The job rejection at issue

49

involved no threat beyond ordinary economic harm. Even if Faulk experienced stress, this was insufficient under this factor, which requires a showing of harm to health or safety beyond economic impact. *Williams,* 947 F.3d at 752.

Next, as the court acknowledged, Faulk was not "financially vulnerable." (DE#220:44). He did not testify to financial hardship resulting from Dimerco's conduct, and although he stated Dimerco's decision negatively impacted his career trajectory, Dimerco was prevented from exploring how such perceived hardship was attributable to his own criminal history, rather than Dimerco's actions. Thus, the court's finding that Faulk was "vulnerable" to Dimerco's "ability to take advantage of him" (DE#220:44) was based on speculation, not the record. *Williams*, 947 F.2d at 751. Unlike *Sepulveda v. Burnside*, 432 Fed. App'x 860 (11th Cir. 2011)—a case cited by the court where the plaintiff inmate depended on the defendant's policies for protection and survival—Faulk presented no evidence that he was particularly susceptible to racial discrimination or dependent on Dimerco for financial stability, employment opportunities, or any other form of critical support. As such, the court clearly erred in finding this factor favors Faulk. *Williams,* 947 F.2d at 751.

The court's finding of a pattern of discriminatory behavior by Dimerco (DE#220:44-48) was also contrary to the evidence, which showed that Faulk was offered a position by Atlanta branch manager Song, who revoked it after learning of his prior aggravated assault charge, regardless of his race. The alleged misconduct

involved Liou, a President of U.S. Operations with a short tenure in that position, and unrelated incidents in different offices with different managers, and differently-situated applicants, mostly occurring after Faulk's offer was rescinded. Punitive damages cannot rest on "dissimilar" conduct unrelated to the plaintiff's harm. *State Farm*, 538 U.S. at 422. "A defendant should be punished for the harm that harmed the plaintiff, not for being an unsavory individual or business." *Id*. at 423. Indeed, "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id*. Moreover, Liou's alleged actions violated Dimerco's policies and were not endorsed by Song, who handled the Atlanta hiring. (DE#164-43:7; DE#169-2:280; USCA11#23:22). This fourth factor either supports Dimerco or is neutral at worst.

Finally, the court's finding that Dimerco acted with "malice and deceit" (DE#220:48) was clearly erroneous. The evidence showed no intent to harm Faulk. While Liou's hiring preferences were poorly conceived, they were not malicious. Liou's email to Howard and Song asked for revocation of Faulk's offer due to his criminal history. Other decisions-makers, including Song and Howard, explicitly rejected Liou's hiring preferences, as evidenced by their decision to offer Faulk the position in the first place. Faulk's harm resulted from non-hiring based on his criminal record, not malicious intent. Although the court reasoned that the jury found

"either malice or reckless indifference" (DE#220:48), recklessness—connoting more than accident—does not equate to malice for this factor. *Williams*, 947 F.3d at 754. Absent malice or deceit, but with actions exceeding a "mere accident," this factor is neutral.

Thus, the *Gore* reprehensibility factors either favor Dimerco or, at most, are neutral, demonstrating that Dimerco's conduct was not sufficiently egregious to justify punitive damages, let alone a $3,000,000 award. The court's finding that four of these factors weigh in Faulk's favor is "contrary to the evidence" and thus clearly erroneous. *Williams,* 947 F.3d at 751.

2.    <u>The Ratio of Punitive to Compensatory Damages is Too High</u>

Regardless, the 7.69:1 ratio of punitive to compensatory damages far exceeds constitutional limits for conduct of this nature. Under the second *Gore* guidepost, punitive damages must bear a "reasonable relationship" to compensatory damages. 517 U.S. at 580. While the Supreme Court has avoided setting a strict cap, it has cautioned that ratios exceeding 4:1 "might be close to the line of constitutional impropriety," and that, where compensatory damages are "substantial," a 1:1 ratio may mark the "outermost" constitutional limit. *State Farm,* 538 U.S. at 425;[12] *accord Williams,* 947 F.3d at 754-55.

---

[12] While the court criticized Dimerco for relying on "dicta" from *State Farm* about the 1:1 ratio (DE#220:50), "dicta from the Supreme Court is not something to be

Here, Faulk's compensatory award of $390,000, including $90,000 in lost wages and $300,000 in emotional distress damages, was substantial and more than fully compensated his alleged harm. *Id.* at 755 (deeming $250,000 compensatory award "substantial"). Moreover, his emotional distress damages already inherently "'contain [a] punitive element.'" *Id.* at 765 n.23 (quoting *State Farm,* 538 U.S. at 426). Thus, the nearly 8:1 ratio was unjustified. *Williams,* 947 F.3d at 755 ("higher ratios … are more reasonably justified when [compensatory damages are] for a relatively small amount of money"; reducing punitive damages where ratio exceeded 4:1).

In several race discrimination cases following *State Farm*, courts have held that a 1:1 ratio represents the constitutional limit where compensatory damages are substantial, even where the conduct involved extended reprehensible treatment of current employees. *See, e.g., Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 795, 799 (8th Cir. 2004) (reducing $6,000,000 punitive award to $600,000 (1:1 ratio) despite egregious workplace racial harassment, including repeated racist language, disparate treatment of black employees, and singling out black plaintiff to remedy problems created by white employees); *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 148-49 (2d Cir. 2011) (affirming reduction of $1,600,000 punitive award to

---

lightly cast aside." *U.S. v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010) (cleaned up).

$190,000 (less than 1:1 ratio) in racial discrimination case involving "reprehensible" conduct of targeting black employees over period of time); *Sooroojballie v. Port. Auth. of N.Y. & N.J.,* 816 Fed. App'x 536, 548–49 (2d Cir. 2020) (affirming $150,000 punitive award (less than 1:1 ratio) in suit for pattern of malicious racial and national origin discrimination); *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 10 (1st Cir. 2018)  (affirming $1,300,000 punitive award (less than 1:1 ratio) in Section 1981 racial discrimination and wrongful termination case where employer was aware of supervisors' repeated racially-demeaning comments to employee, failed to investigate complaints, discipline offenders or remedy situation, and made concerted effort to isolate and drive out employee). *Accord Saccameno v. U.S. Bank Nat'l Ass'n,* 943 F.3d 1071, 1089-90 (7th Cir. 2019) (reducing $3,000,000 award (roughly 5:1 ratio) to $582,000 (1:1 ratio) in case involving repeated reprehensible conduct against financially vulnerable victim).

If Faulk's emotional distress award is reduced (thereby making it less "substantial"), a punitive award in the 1:1-2:1 range would be more constitutionally sound. In *Williams,* evaluating the propriety of a $3.3 million punitive award in relation to a $250,000 compensatory award, this Court examined fifteen out-of-circuit punitive damage cases involving substantial compensatory awards ranging from $200,000 to $300,000 (comparable to the $250,000 award in that case but

below Faulk's $390,000 award). 947 F.3d at 760–63.[13] Nine were affirmed, six of which involved ratios of 2:1 or less, with remitted awards generally below $500,000. *Id.* at 760–61, 769 (O'Scannlain, J., concurring). And the courts that vacated punitive awards in four of the six cases also reduced the punitive damages to $500,000 or less, significantly lower than the $3,000,000 award here. *Id.* at 769.

The district court's cursory analysis of the ratio here was fatally flawed. Its claim that no "Supreme Court or Eleventh Circuit case disapprov[es] of a single-digit ratio" (DE#220:50) myopically ignores the holding of *Williams,* 947 F.3d at 767, that, on its facts, any ratio exceeding 4:1 was unconstitutional. Further, a reviewing court must evaluate whether a punitive award is grossly excessive by weighing "the egregiousness of the particular misconduct and the harm it has caused." *Id.* at 762. The district court failed to perform this critical analysis, rendering its reasoning legally unsustainable.

While the ratio provides a framework for assessing permissibility, it cannot, by itself, determine whether an award is constitutionally excessive. *State Farm,* 538 U.S. at 426 (reviewing court must ensure that punishment is "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered"). Dimerco has not identified a single case—and neither Faulk nor the

---

[13] The *Williams* court found that the out-of-circuit cases involved more comparable ratios and conduct. *Id*. at 758-59.

court cited one—where a discrimination claim based on the revocation of a conditional employment offer resulted in a damage award anywhere near this magnitude. Even when compared to discrimination cases involving sustained discriminatory actions against actual employees, Faulk's $3,000,000 award stands out as grossly excessive. *See, e.g., Goldsmith,* 513 F.3d at 1283-84 (upholding $500,000 punitive award for "exceedingly reprehensible" repeated racial discrimination and retaliation, including racial slurs by company president and termination of black employees for filing EEOC charges); *EEOC v. W&O, Inc.,* 213 F.3d 600, 611-12, 624 (11th Cir. 2000) (affirming $100,000 punitive award based on explicit policy discriminating against pregnant women and owner's disparaging remarks); *Bryant v. Jeffrey Sand Co.,* 919 F.3d 520, 524-26 (8th Cir. 2019) (affirming $250,000 punitive award for "pattern of racially-motivated abuse," including graphic racist insults and physical altercations, and management's repeated disregard of complaints); *Bowles v. Osmose Utils. Servs., Inc.,* 443 F.3d 671, 674–75 (8th Cir. 2006) (affirming $80,000 punitive award where plaintiff endured  months of racial insults continually ignored by company); *Bains LLC v. Arco Prods. Co.,* 405 F.3d 764, 767–68, 775–77 (9th Cir. 2005) (reducing $5,000,000 punitive award to $300,000–$450,000 range for "highly reprehensible conduct," including repeated ethnic slurs and disparate treatment, disregarded by company).

Dimerco's purportedly discriminatory hiring decision pales in comparison to the misconduct in the foregoing cases, which involved systemic racial harassment, repeated discrimination, and severe harm inflicted on current or long-term employees. Accordingly, Faulk's $3,000,000 punitive award is constitutionally excessive and far out of proportion to the nature and extent of the alleged wrongdoing. A reduction to a ratio of 1:1—or, at most, 2:1, assuming the compensatory award is reduced—comports with due process.

3.    The Punitive Award Greatly Exceeds Analogous Civil Penalties

Courts in Section 1981 cases have compared punitive damages to Congress' $100,000 damages cap (for companies Dimerco's size), *see* 42 U.S.C. § 1981a(b)(3)(B), for ***all*** non-back-pay damages under Title VII. *See, e.g., ConAgra Poultry,* 378 F.3d at 798; *Copley v. BAX Global, Inc.,* 97 F. Supp. 2d 1164, 1173 (S.D. Fla. 2000). Faulk's $3,000,000 award surpasses this cap and should be reduced.

Thus, applying the *Gore* guideposts, the punitive award against Dimerco is so grossly excessive it violates due process. *Gore,* 517 U.S. at 568, While Dimerco submits that no punitive damages are legally authorized, if the Court finds otherwise, a 2:1 ratio represents the constitutional outer limit. *State Farm,* 538 U.S. at 425. Accordingly, the punitive damages should be eliminated or reduced to a

constitutionally appropriate amount, either by this Court or the district court on remand.

## IV. FAULK'S ATTORNEYS' FEE AWARD SHOULD BE VACATED

Finally, if the underlying final judgment is reversed, the post-trial award of prevailing-party attorneys' fees and costs to Faulk (DE#221; DE#222; DE#223) must also be reversed. *Doe v. Busbee,* 684 F.2d 1375, 1380 (11th Cir. 1982).

## CONCLUSION

The district court's amended final judgment and attorneys' fee judgment for Faulk should be reversed and remanded for a new trial on all issues, or, alternatively, on damages only. At a minimum, the compensatory damage award for emotional distress should be eliminated or reduced to comport with the record evidence, and the punitive damage award should be vacated or reduced to a constitutionally permissible amount to be determined by this Court or the district court on remand.

Dated:  January 10, 2025                                   Respectfully submitted,

**HOLLAND & KNIGHT LLP**                   **HOLLAND & KNIGHT LLP**
Cynthia G. Burnside
Georgia Bar No. 097107                           By: /s/ Ilene L. Pabian
cynthia.burnside@hklaw.com                   Ilene L. Pabian
Nicholas R. Boyd                                       Florida Bar No. 62499
Georgia Bar No. 849842                           ilene.pabian@hklaw.com
nicholas.boyd@hklaw.com                       701 Brickell Ave., Suite 3300
1180 Peachtree Street, N.W., Ste. 1800   Miami, FL 33131
Atlanta, GA 30309                                    T: (305) 374-8500/F: (305) 789-7799
T: (404) 817-8500/F: (404) 881-0470

***Attorneys for Appellant Dimerco Express (USA) Corp.***

**CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains <u>12,976</u> words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

<u>    /s/ Ilene L. Pabian        </u>
Ilene L. Pabian

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, I electronically filed the foregoing with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

<u>    /s/ Ilene L. Pabian        </u>
Ilene L. Pabian

#514922514_v5