**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

**CASE NO.: 24-12603-HH**

**DIMERCO EXPRESS (USA) CORP.,**

**Appellant,**

**v.**

**KENNY FAULK,**

**Appellee.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA**
**CASE NO. 1:21-CV-1850-MLB**
**HONORABLE MICHAEL L. BROWN**

# REPLY BRIEF OF APPELLANT

**HOLLAND & KNIGHT LLP**
Cynthia G. Burnside
Nicholas R. Boyd
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
Tel: (404) 817-8500
Fax: (404) 881-0470
cynthia.burnside@hklaw.com
nicholas.boyd@hklaw.com

**HOLLAND & KNIGHT LLP**
Ilene L. Pabian
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
ilene.pabian@hklaw.com

***Counsel for Appellant***

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the Eleventh Circuit, undersigned counsel for Appellant Dimerco Express (USA) Corp. gives notice of the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

Barrett & Farahany, LLC, counsel for Appellee

Boyd, Nicholas R., counsel for Appellant

Brown, Honorable Judge Michael L., United States District Court Judge

Burnside, Cynthia G., counsel for Appellant

Corbitt, Canon T., trial counsel for Appellant

Dimerco Express Corp., related entity of Appellant

Dimerco Express (USA) Corp., Appellant

Eason, Leslie K., trial counsel for Appellant

Farahany, Amanda, counsel for Appellee

Faulk, Kenneth, Appellee

Fielding, James S., trial counsel for Appellant

Gavrilidis, Catherine, trial counsel for Appellee

Glasgow, Julia, trial counsel for Appellant

Gordon Rees Scully Mansukhani, LLP, trial counsel for Appellant

Holland & Knight LLP, counsel for Appellant

Jones, David G., trial counsel for Appellant

Larkins III, Honorable John K., United States Magistrate Judge

Littler Mendelson, P.C., trial counsel for Appellant

Maduff, Aaron B., counsel for Appellee

Olsen & Brueggemann, PC, trial counsel for Appellant

Pabian, Ilene L., counsel for Appellant

Panter, Zac, trial counsel for Appellee

Peebles, Burton F., trial counsel for Appellant

Polsinelli PC, trial counsel for Appellant

Rollins, Benjamin J., counsel for Appellee

Reid, Patrick J., counsel for Appellee

Roberts, V. Severin, trial counsel for Appellee

Shultz, Chad, trial counsel for Appellant

Stastny, Steven M., trial counsel for Appellant

*/s/ Ilene L. Pabian*
Ilene L. Pabian

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3, Appellant Dimerco Express (USA) Corp. hereby certifies that the following is a full and complete list of all publicly traded companies or corporations that have an interest in the outcome of this appeal:

Dimerco Express Corp.

*/s/ Ilene L. Pabian*
Ilene L. Pabian

# TABLE OF CONTENTS

**Page**


APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....C-1

TABLE OF CITATIONS .... iii

ARGUMENT ....1

I. PERVASIVE UNCORRECTED COUNSEL MISCONDUCT ENTITLES DIMERCO TO A NEW TRIAL ....1

A. Improper Opening Statement and Closing Argument....2

B. Improper Examination of Dimerco's Main Witness ....5

C. Continued Misrepresentation of Trial Misconduct ....7

II. MULTIPLE EVIDENTIARY ERRORS WARRANT A NEW TRIAL ....9

A. Exclusion of Faulk's 2019 Arrest and Incarceration ....9

B. Exclusion of DX-17 Related to Faulk's 2014 Aggravated Assault Charge....13

III. CUMULATIVE ERROR REQUIRES A NEW TRIAL ....14

IV. FAULK'S DAMAGE AWARDS ARE LEGALLY IMPERMISSIBLE....15

A. The Excessive Emotional Distress Award Lacks Evidentiary Support ....16

B. The Exorbitant Punitive Damage Award Is Unconstitutional ....19

1. The Gore Factors Show Low Reprehensibility ....20

2. The Punitive-to-Compensatory Ratio is Too High....23

3. The Available Civil Penalties Highlight the Unconstitutional Excessiveness of Faulk's Award....27

**TABLE OF CONTENTS**

**Page**

V. FAULK'S ATTORNEYS' FEE AWARD SHOULD BE VACATED ........29

CONCLUSION ........29

CERTIFICATE OF COMPLIANCE ........30

CERTIFICATE OF SERVICE ........30

# TABLE OF CITATIONS

**CASES** **Page**

*Akouri v. State of Fla. Dep't of Transp.*,
408 F.3d 1338 (11th Cir. 2005) ........................................................*passim*

**Allstate Ins. Co. v. James*,
845 F.2d 315 (11th Cir. 1988) ........................................................2, 4, 7, 8

**BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
955 F.2d 1467 (11th Cir. 1992) ........................................................8

*Barber v. City of Chicago*,
725 F.3d 702 (7th Cir. 2013) ........................................................10, 11

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)........................................................*passim*

*Bogle v. McClure*,
332 F.3d 1347 (11th Cir. 2003) ........................................................19

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981) ........................................................11

*Brady v. Fort Bend Cnty.*,
145 F.3d 691 (5th Cir. 1998) ........................................................17

**Bryan v. Jones*,
519 F.2d 44 (5th Cir. 1975),
*reversed on other grounds,* 530 F.2d 1210 (5th Cir. 1976)................................11

**Cephus v. CSX Transp., Inc.*,
771 F. App'x 883 (11th Cir. 2019) ........................................................2, 7

*Chopourian v. Catholic Healthcare West*,
2012 WL 1551728 (E.D. Cal. Apr. 30, 2012) ............................................26

**Christopher v. Florida*,
449 F.3d 1360 (11th Cir. 2006) ........................................................5

*Copley v. BAX Global, Inc.*,
97 F. Supp. 2d 1164 (S.D. Fla. 2000)..................................................*passim*

# TABLE OF CITATIONS

**CASES** **Page**

**Deas v. PACCAR, Inc.*,
775 F.3d 1498 (11th Cir. 1985) ....................7

*Ferrill v. Parker Grp., Inc.*,
168 F.3d 468 (11th Cir. 1999) ....................16

*Forshee v. Waterloo Indus., Inc.*,
178 F.3d 527 (8th Cir. 1999) ....................18

*Goldsmith v. Bagby Elevator Co.*,
513 F.3d 1261 (11th Cir. 2008) ....................20

*Lambert v. Fulton Cnty., Ga.*,
253 F.3d 588 (11th Cir. 2001) ....................19

*McLean v. GMAC Mortg. Corp.*,
398 F. App'x 467 (11th Cir. 2010) ....................16, 17

**McWhorter v. City of Birmingham*,
906 F.2d 674 (11th Cir. 1990) ....................5

*Moore v. Sears, Roebuck & Co.,*
683 F.2d 1321 (11th Cir. 1982) ....................13

*Myers v. Central Fla. Invs., Inc.*,
592 F.3d 1201 (11th Cir. 2010) ....................20, 21

*Peat, Inc. v. Vanguard Rsch., Inc.*,
378 F.3d 1154 (11th Cir. 2004) ....................9, 12

*Proctor v. Fluor Enters., Inc.*,
494 F.3d 1337 (11th Cir. 2007) ....................9, 12

*Schandelmeier-Bartels v. Chicago Park Dist.*,
634 F.3d 372 (7th Cir. 2011) ....................18

*Sepulveda v. Burnside*,
432 F. App'x 860 (11th Cir. 2011) ....................20

*State Farm Mut. Auto Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ....................23, 27, 28

# TABLE OF CITATIONS


**CASES** **Page**

*Taylor v. Mentor Worldwide LLC*,
940 F.3d 582 (11th Cir. 2019) ....................4

*U.S. v. Canty*,
37 F.4th 775 (1st Cir. 2022) ....................3

*U.S. v. Jones,*
29 F.3d 1549, 1553 (11th Cir. 1994) ....................12

*U.S. v. Graham*,
123 F.4th 1197 (11th Cir. 2024) .................... 14, 15

*Williams v. ConAgra Poultry Co.*,
378 F.3d 790 (8th Cir. 2004) ....................*passim*

**Williams v. First Advantage LNS Screening Solutions, Inc.*,
947 F.3d 735 (11th Cir. 2020) ....................*passim*

**Wilson v. Taylor*,
733 F.2d 1539 (11th Cir. 1984),
*abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist.,*
491 U.S. 701 (1989) ....................18

**STATUTES**

Title 42, United States Code, Section 1981a(b)(3)(B) ....................28

**RULES**

Rule 803(8), Federal Rules of Evidence ....................13

# ARGUMENT

## I. PERVASIVE UNCORRECTED COUNSEL MISCONDUCT ENTITLES DIMERCO TO A NEW TRIAL

Seeking to preserve his $3.39 million verdict, Faulk strategically downplays the repeated misconduct by his counsel, who ignored the district court's explicit instructions not to appeal to the jury's emotions by recruiting them to join Faulk's "team." He also distorts the record evidence, inventing corrective measures the court never took. Thus, on appeal, Faulk's counsel continues the same pattern as counsel at trial—misrepresenting the record and disregarding the court's rulings to justify an unjust result.

Additionally, Faulk's selective response to Dimerco's brief, which effectively concedes the validity of many of Dimerco's arguments, ignores key portions of the record undermining his position. His attempt to minimize the severity of the misconduct does not justify the court's denial of Dimerco's motion for new trial or its failure to reduce the excessive verdict.

Contrary to Faulk's claim that the misconduct was minor (*e.g.*, a few sentences during opening and closing argument; a single question on cross-examination; an "inadvertent nod" (AB.17)),[1] as even the district court acknowledged at the time, Faulk's counsel's misconduct tainted the entire trial. The

[1] Dimerco's initial brief is denominated "IB" and Faulk's response brief as "AB."

court rebuked Faulk's counsel for knowingly violating its directives following improper opening statements and even considered *sua sponte* declaring a mistrial due to the intentional violation and resulting "unfairness" and "confus[ion]." (DE#170:10-18). As Dimerco has outlined, this unchecked misconduct played a central role in securing a $3.39 million award for a convicted felon who misrepresented his employment status and never worked a day for Dimerco.

**A. Improper Opening Statement and Closing Argument**

As Faulk agrees, a new trial is warranted where improper closing arguments severely prejudice a party. (IB.16-17; AB.17). In reviewing the denial of a new trial based on such misconduct, this Court considers "the entire argument, the context of the remarks, the objection raised, and the curative instruction." *Allstate Ins. Co. v. James,* 845 F.2d 315, 318 (11th Cir. 1988). Importantly, the presence (or in this case, the absence) of a curative instruction is "critical" in assessing whether the court abused its discretion in refusing a new trial. *Cephus v. CSX Transp., Inc.,* 771 F. App'x 883, 895 (11th Cir. 2019).

Faulk's brief omits key details, such as the court, outside the jury's presence, reprimanding his counsel for the improper "passing the torch" argument during opening (which Faulk glibly characterizes as a "cliché") and warning her not to repeat it during closing. He also ignores that the court—again without the jury present—expressed shock when his counsel "aggressively and knowingly" violated

this instruction during rebuttal closing. Further, Faulk completely disregards that the misconduct led the court to consider *sua sponte* a mistrial. Thus, Faulk's distorted portrayal of the proceedings minimizes the misconduct's severity and ignores its damaging effects, including the resulting grossly excessive jury verdict.

Faulk also claims the court took "curative actions" to mitigate the prejudice, but the record disproves that assertion. (AB.19). Although the court sustained an objection to counsel's improper closing remarks, it denied Dimerco's *repeated* requests for a curative instruction, citing potential "prejudice" to Faulk. (DE#169-2:366, 369-70; DE#170:15-17). Additionally, the court admonished Faulk's counsel *outside* the jury's presence, leaving them to deliberate believing that they did so as Faulk's teammates. (DE#169-2:366-72; DE#170:10-24; DE#237:294-97).[2] Faulk's reliance on the court's standard instructions that counsel's arguments are not evidence (AB.21) is misplaced; such general instructions were inadequate to neutralize the prejudice, especially since they were given at the start of trial and before deliberations, not in response to the improper arguments. *See U.S. v. Canty,* 37 F.4th 775, 792-93 (1st Cir. 2022). By refusing to give a targeted curative

[2] Faulk's unsupported assertion about the "contemporaneous admonishment" of his counsel is another mischaracterization of the record. (AB.21). In truth, the court remarked outside the jury's presence: "for about the fifth time, I'm going to allow Ms. Farahany to disregard my instructions, to act inappropriately, with zero ramifications, I suppose just rewarding bad behavior." (DE:169-2:370).

instruction and deeming these general instructions sufficient, the court misapplied the law and thereby abused its discretion. *Taylor v. Mentor Worldwide LLC,* 940 F.3d 582, 593 (11th Cir. 2019).

Faulk's reliance on the court's inconsistent finding that counsel's egregious misconduct did not impair the jury's impartiality is also unconvincing. The court's own recognition of the misconduct's severity undermines that conclusion. Combined with the failure to issue a curative instruction, this highlights the court's abuse of discretion in denying a new trial, just as in *Allstate*. *See* 845 F.2d at 318-19.

Faulk fails to persuasively distinguish *Allstate,* where improper closing remarks similarly compromised the jury's impartiality. His claim that the misconduct in *Allstate*—suggesting jurors would suffer higher insurance premiums if they sided with the defendants, *id.* at 318—was worse than his counsel's conduct here (AB.19) is unsupported opinion. Faulk's counsel's attempt to recruit the jury to his "team" went beyond urging them to "do [their] job" and violated court directives. (AB.19). As in *Allstate,* the absence of a curative instruction compounded to prejudice to Dimerco's rights. *Id.* at 319.

Moreover, Faulk's counsel's disregard for the court's express directives during rebuttal closing, when Dimerco had no opportunity to respond, further exacerbated the misconduct's prejudice, entitling Dimerco to a new trial. *See*

*McWhorter v. City of Birmingham,* 906 F.2d 674, 677-78 (11th Cir. 1990). Faulk's attempt to distinguish *McWhorter* because the district court there granted a new trial is unconvincing. *McWhorter* (where there was a curative instruction and no contemporaneous defense objection) demonstrates that a grant of a new trial is correct when a prejudicial argument that was specifically barred is made in rebuttal closing. *Id.*

Finally, Faulk cannot shield the court's erroneous denial of a new trial by citing the court's "discretion" or the purportedly "copious evidence" of liability. (AB.21). The law does not allow a court to disregard prejudicial misconduct merely because it believes the evidence supports the verdict. Because counsel's inflammatory and prejudicial misconduct permeated the trial and remained uncorrected in the jury's eyes, the court abused its discretion in refusing to grant a new trial. The court's failure to take meaningful corrective action allowed the severe prejudice to persist, warranting a new trial. *Id.* at 677-78; *Christopher v. Florida,* 449 F.3d 1360, 1367-68 (11th Cir. 2006).

### B. Improper Examination of Dimerco's Main Witness

Further distorting the record, Faulk attempts to downplay the substantial harm caused by his counsel's improper cross-examination of Dimerco's key witness, Sookie Song. Song indisputably testified that her decision to rescind Faulk's job offer was based on her review of information beyond the ADP report, particularly

DX-17, a public record showing Faulk's original 2014 felony aggravated assault charge. (DE#169-2:255-56, 264-69, 275-76, 279-80; USCA11#23:109). This document was central to Dimerco's defense, as it directly supported its legitimate, nondiscriminatory basis for revoking Faulk's offer. Faulk's claim on appeal that Song relied only on the ADP report is yet another unsupported misrepresentation. (AB.22).

As detailed in Dimerco's brief, despite agreeing to admit DX-17, Faulk's counsel reversed course when Dimerco moved to introduce it, and persuaded the court to exclude it. (IB.6, 30). Then, during Song's cross-examination, Faulk's counsel falsely implied that DX-17 did not exist, undermining Song's credibility and eviscerating Dimerco's defense that it revoked Faulk's offer based on his felony aggravated assault arrest, not his race. (DE#169-2:276-77). Faulk ignores the court's flawed attempt to address this misconduct by remarking "the only thing that's in evidence is the evidence," which, in the jury's eyes, reinforced the false impression that DX-17 was nonexistent. (DE#169-2:277). Furthermore, the court recognized—again, outside the jury's presence—that this cross-examination was "totally unfair" and created the "false belief" that no supporting documentation existed, despite Faulk's counsel securing its exclusion just "moments before." (DE#169-2:295-96; DE#220:13).

Faulk cannot credibly argue that the jury was unaffected by this misconduct simply because, as the court found in denying a new trial, Song "did not answer" the improper question and the court generally instructed the jury to disregard summaries of evidence. (AB.23). The jury's understanding of the "operative facts" central to Dimerco's defense was intentionally and prejudicially "distorted," warranting a new trial. *Deas v. PACCAR, Inc.,* 775 F.2d 1498, 1504 (11th Cir. 1985).

Finally, Faulk's argument that the jury was not misled because it heard Song's "unimpeached" testimony about her reliance on the aggravated assault charge (AB.23) contradicts his own admission in a footnote, where he acknowledges other evidence that "impeached" Song's testimony, suggesting the decision was motivated by race, not the assault charge. (AB.23.n.6). In other words, Faulk admits that his counsel's improper questioning distorted the jury's understanding of a key disputed operative fact. *Id*. For this reason, too, the court abused its discretion in denying a new trial. *Id.*; *Cephus,* 771 F. App'x at 895; *Allstate,* 845 F.2d at 318.

### C. Continued Misrepresentation of Trial Misconduct

Continuing to mischaracterize the facts, Faulk tries to trivialize his counsel's other improper trial behavior. (AB.24). But the record shows a pattern of persistent disregard for the court's authority and other obstructionist tactics, much of which occurred in front of the jury with any admonishment occurring only *after* the jurors were dismissed. *See* DE#175-1:6-7.

The court's mere assertion that the jury was unaffected by counsel's severe misconduct is insufficient to nullify the prejudice to Dimerco. By failing to hold counsel accountable for actions it acknowledged were willful and unfair—purportedly to avoid harming Faulk—the court compromised the jury's ability to fairly evaluate the case, depriving Dimerco of a fair trial. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1474 (11th Cir. 1992). A full assessment of counsel's misconduct, not Faulk's sanitized version, shows that these errors cumulatively require a new trial.

In sum, the misconduct of Faulk's counsel—spanning from improper arguments recruiting juror's to Faulk's "team," inflaming their sympathy, misleading cross-examination distorting the record, and repeated defiance of court directives—compromised the integrity of the trial. This conduct was not only pervasive and deliberate but also left uncorrected in the jury's eyes. By failing to issue a curative instruction directed to the conduct or impose any sanction, the court allowed the jury to proceed under the false impression that such behavior was acceptable, thereby undermining their impartiality. Because this inflammatory and unchecked misconduct permeating the trial gravely impaired the jury's consideration of the case, Dimerco is entitled to a new trial. *Id.*; *Allstate*, 845 F.2d at 318.

## II. MULTIPLE EVIDENTIARY ERRORS WARRANT A NEW TRIAL

Faulk defends the court's erroneous exclusion of evidence regarding his 2019 domestic violence arrest and his 2014 aggravated assault charge, contending it was a proper exercise of discretion. However, the court misapplied the law, reversing its initial decisions to admit this crucial and highly probative evidence, which Dimerco demonstrated would have significantly influenced the jury's verdict. These errors directly harmed Dimerco's substantial rights, warranting a new trial. *Proctor v. Fluor Enters., Inc.,* 494 F.3d 1337, 1352 (11th Cir. 2007); *Peat, Inc. v. Vanguard Rsch., Inc.,* 378 F.3d 1154, 1162 (11th Cir. 2004).

### A. Exclusion of Faulk's 2019 Arrest and Incarceration

Faulk urges that the exclusion of evidence of his 2019 arrest for rape and aggravated assault was proper, arguing the court correctly applied a non-binding, distinguishable Seventh Circuit decision instead of controlling authority in this Circuit. (AB.14, 26-30). This argument is fatally flawed. Dimerco correctly pointed out that this Circuit mandates that "the context of the events surrounding the emotional distress" be considered when evaluating emotional distress damages. *Akouri v. State of Fla. Dep't of Transp.,* 408 F.3d 1338, 1345 n.5 (11th Cir. 2005) (cleaned up). Initially, the district court acknowledged that Faulk's 2019 arrest provided this necessary context, but later excluded it. Faulk's defense of this ruling is unconvincing.

To support his position, Faulk cites the court's reliance on *Barber v. City of Chicago,* 725 F.3d 702 (7th Cir. 2013), a false arrest and excessive force case, in which the Seventh Circuit deemed it erroneous to admit the plaintiff's *subsequent* conviction and incarceration for possession of a stolen vehicle due to the "tenuous" connection to the issue of emotional distress. *Id.* at 711-12. Yet, as we have explained, *Barber* is readily distinguishable. Contrary to Faulk's argument that *Barber* dealt with the erroneous admission of a "prior conviction" (AB.26), the erroneously admitted conviction *actually occurred five years* <u>*after*</u> *plaintiff's wrongful arrest* and thus could not explain his emotional distress stemming from that arrest. *Id.* at 711-13. Further, the emotional distress claim in *Barber* was "focused narrowly" on the plaintiff's interactions with the arresting officers, and emotional distress damages was "a very minor issue." *Id.* at 713-14. Consequently, it was hardly surprising that the appellate court determined that the risk of prejudice outweighed the evidence's "infinitesimal probative value." *Id.* at 715. The circumstances here are dramatically different.

Faulk's 2019 charges predate the revocation of his job offer with Dimerco, and were pending during the entire claimed emotional distress period, making the evidence highly relevant. Additionally, Faulk's testimony covered a broader range of emotions and time, not just those tied to the alleged discrimination, opening the door for Dimerco to present other potential causes of his distress, such as his pending

criminal charges. (DE#169-2:52-53, 56, 59-60, 77).[3] No matter how Faulk attempted to compartmentalize his testimony to avoid the stigma of those charges, it was impossible to separate the emotional distress caused by his charges, his incarceration and the resulting loss of his former position, from the distress he attributed to the alleged discrimination.

There was no legally justifiable reason—and Faulk offers none in his brief—for the court's refusal to apply *Bryan v. Jones,* 519 F.2d 44 (5th Cir. 1975), *reversed on other grounds,* 530 F.2d 1210 (5th Cir. 1976) (en banc), a binding case from this Circuit.[4] In *Bryan,* as here, the district court excluded evidence of the plaintiff's prior incarceration on the ground that it was irrelevant to his emotional distress claim, which the court narrowly construed as limited to mental suffering caused solely by the defendants' conduct. *Id.* at 46. The Fifth Circuit reversed, holding that the causes of emotional distress cannot be "cut so fine" and that the defense should have been permitted to introduce evidence of the plaintiff's earlier incarceration. *Id. Bryan*'s reasoning is directly applicable and controlling in this case.

---

[3] The court itself stated post-trial, in determining that Faulk's testimony supported the jury's large emotional distress award, that Faulk's demeanor "evidenced profound sadness, anguish, and humiliation." (DE#220:37). This finding, however, was entirely inconsistent with its previous finding in the same order that the testimony was narrowly cabined as in *Barber*. (DE#220:24-25).

[4] *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

In addition, the court could have adopted Dimerco's proposal to introduce a limited version of the evidence—one that omitted any mention of the nature of Faulk's charges—to minimize any potential prejudice, but it chose not to. Faulk's emphasis on irrelevant details, such as Dimerco's unawareness of charges at the time of hiring and the fact that Faulk was not convicted of rape (AB.25),[5] misses the central issue: the improper exclusion of this evidence deprived Dimerco of the opportunity to present "all factual elements" relevant to Faulk's emotional distress. *Id*.

This exclusion undoubtedly influenced the jury's verdict and damages award, unfairly prejudicing Dimerco. *Proctor,* 494 F.3d at 1352. Accordingly, the court abused its discretion by excluding evidence of Faulk's rape arrest, and Dimerco is entitled to a new trial. *Id.*; *Peat,* 378 F.3d at 1162.

---

[5] Faulk misleadingly omits the fact that he pled guilty to lesser charges of sexual battery and battery-family violence six months after this civil trial. See, 22SC183451, 5/31/2024 Final Disposition Form (found at https://portal-gafulton.tdr.tylerhosting.cloud/Portal/Home/WorkspaceMode?p=0#). While Faulk's post-trial criminal history is not included in the district court record, this information is offered to rebut the persistent efforts to trivialize important facts in Faulk's brief on this point (AB.8, 25, 30). As such, Dimerco asks the Court to take judicial notice of this court record. *See U.S. v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994) (appellate court may take judicial notice of court records to establish that they exist).

### B. Exclusion of DX-17 Related to Faulk's 2014 Aggravated Assault Charge

Faulk's assertion that Dimerco waived its challenge to the exclusion of DX-17 by failing to explain on appeal "why" it should be admitted is baseless. Dimerco fully articulated in its brief the same grounds it presented at trial: DX-17 is a "public criminal court record showing Faulk's original 2014 aggravated assault charge," which was vital to Dimerco's defense as it supported Song's decision to revoke Faulk's job offer due to "serious concerns about workplace safety and liability" given Faulk's client-facing duties. (IB.41-42). Additionally, Dimerco explained that, as the court itself acknowledged, the document was "not hearsay"—it was offered to show what Dimerco relied upon when Song revoked its offer of employment, not for the truth of its contents (IB.43) (citing DE#169-2:263; *Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1322 (11th Cir. 1982))—and it qualified for admission under the public records exception in Federal Rule of Evidence 803(8)(A). (IB.43).

Equally meritless is Faulk's claim that Dimerco waived this issue by not raising it below. Dimerco offered the document after properly laying the foundation, but the court—at Faulk's counsel's urging—excluded it, despite counsel's earlier concession that it was admissible. (DE:169-2:255-60; DE:237:46-52). It defies logic to suggest Dimerco waived its challenge to the exclusion of its own evidence merely because the court changed course mid-trial. The issue was preserved and is properly before this Court.

Faulk also mischaracterizes the court's rationale for exclusion, claiming it balanced probative value against prejudice. In fact, did not such analysis, simply stating without explanation that the document "has a lot of other stuff." (DE#169-2:260). Although the court initially made a reasoned decision to admit the evidence, it later reversed itself without any meaningful justification, improperly excluding non-hearsay public record evidence critical to Dimerco's defense. This exclusion, compounded by Faulk's counsel misleading the jury about the document's existence (*supra* at 5-7), and the court's refusal to issue a curative instruction, severely prejudiced Dimerco and deprived it of a fair trial. The court's exclusion of this key evidence was an abuse of discretion.

## III. CUMULATIVE ERROR REQUIRES A NEW TRIAL

Citing the five factors outlined in *United States v. Graham,* 123 F.4th 1197, 1283 (11th Cir. 2024)—nature and number of errors, combined effect, court's response, strength of the case, and length of trial—Faulk feigns confusion over Dimerco's argument that the cumulative impact of the errors raised undermined the trial's fairness. (AB.33-34). In doing so, he once again downplays the seriousness of the errors and trial length while overstating the court's "remedial efforts." Most *Graham* factors weigh heavily in Dimerco's favor, showing that the combined effect of the errors—particularly from Faulk's counsel's misconduct and the exclusion of critical evidence—deprived Dimerco of a fair trial.

First, the "nature and number of the errors" were significant: they permeated the trial, and Faulk's counsel was repeatedly admonished (outside the jury's presence). *Id.* Second, the related errors—improper questioning of Song and exclusion of DX-17—had a "combined [prejudicial] effect" that impacted Dimerco's core defense. *Id.* Third, the court's response to these errors was ineffective; Faulk points to general jury instructions, but the court declined to issue specific curative instructions addressing the misconduct, thereby compounding the prejudice.

Fourth, Faulk's claim that his case was "extremely strong" (AB.35) is undercut by record evidence that Song's decision to rescind Faulk's offer was based on legitimate safety concerns raised by his criminal record—not bias. (DE#169-2:255-56, 264-69, 275-76, 279-80). Much of this critical evidence was either erroneously excluded or improperly distorted. Finally, Faulk inaccurately describes the trial as "very short." (AB.36) A four-day trial with five witnesses and 52 exhibits is far from brief.

Taken together, the court's numerous errors cumulatively denied Dimerco a fair trial. For this reason, too, a new trial is required. *Id.*

## IV. FAULK'S DAMAGE AWARDS ARE LEGALLY IMPERMISSIBLE

Faulk defends his $300,000 emotional distress award and $3,000,000 punitive damage award by invoking the court's discretion and recharacterizing his own

testimony. (AB.37, 41, 49). He now claims his "considerable" testimony and complaints of distress justified the compensatory award, contradicting his earlier description of that same testimony as "limited" and "narrowed" when arguing to uphold the exclusion of his rape arrest (AB.27, 29; *see* discussion *supra* at 9-12). As for punitive damages, Faulk asserts that the *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996), factors support his staggering $3,000,000 award, relying on the alleged questionable hiring decisions of Dimerco's short-term former president who, according to Faulk, was aided by the company's legal compliance officer. (AB.15, 45-48, 51, 53-54). None of Faulk's theories withstands scrutiny; at best, they are speculative and unsupported by the record and the law.

### A. The Excessive Emotional Distress Award Lacks Evidentiary Support

To begin, Faulk relies on *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 476 (11th Cir. 1999), to assert that compensatory damages need not be proven with a high degree of specificity and may be inferred from circumstances or established through testimony. (AB.36). But he overlooks more recent precedent in this Circuit, which, while acknowledging *Ferrill,* makes clear that compensatory damages for emotional distress stemming from a constitutional violation "must be proven by competent, sufficient evidence." *Akouri*, 408 F.3d at 1345. This Court further held that emotional distress damages require specific, "demonstrable" proof of actual harm—not mere "conclusory statements." *Id. Accord McLean v. GMAC Mortg.*

*Corp.,* 398 F. App'x 467, 471 (11th Cir. 2010) (cleaned up). In other words, "'genuine injury' is necessary." *Akouri,* 408 F.3d at 1345 (cleaned up).

Faulk argues the general "presumption of validity" afforded to damage awards upheld by trial judges should apply. (AB.37). But he fails to meaningfully address the cases Dimerco cited (IB.45), which require heightened scrutiny of emotional distress awards due to the vague and speculative nature of such damages—making them "easily susceptible to fictitious and trivial claims." *Brady v. Fort Bend Cnty.,* 145 F.3d 691, 719 (5th Cir. 1998) (cleaned up). More importantly, Faulk ignores the court's failure to conduct this required analysis and the contradictions in its findings. Although it upheld the $300,000 award, the court described Faulk's emotional distress claim as "very, very narrow." (DE#169-2:101). Faulk echoes this inconsistency: while he initially called his emotional distress testimony "limited" and "narrowed" (AB.27, 29), he now broadens its scope to shore up this portion of the award. But he cannot have it both ways. His conclusory assertions of sadness, anger and frustration were wholly insufficient to support the award. *See McLean*, 398 F. App'x at 471; *Akouri*, 406 F.3d at 1345. His testimony lacked specifics—physical symptoms, counseling, corroboration, or reputational harm—all key factors identified in *Akouri* (and cited by Faulk at AB.38) in supporting such awards. *Id.* at 1345 n.5.

Faulk's attempt to distinguish *Akouri* and other cases cited by Dimerco is equally unconvincing. He dismisses the cases relied upon as instances where courts eliminated or reduced awards only in extreme circumstances, but fails to meaningfully differentiate them from his own. (AB.39-41). In *Akouri,* like here, the plaintiff failed to describe the pain resulting from discrimination and therefore failed to demonstrate "actual injury by sufficient evidence." *Id.* at 1345-46. Likewise, Faulk's assertion that *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984), *abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989), *Schandelmeier-Bartels v. Chicago Park Dist.,* 634 F.3d 372 (7th Cir. 2011), and *Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527 (8th Cir. 1999), involved "borderline non-existent" supporting testimony (AB.40) ignores their strong factual parallels to this case. *See Wilson,* 733 F.2d at 1549-50 (no specific physical or psychological harm beyond generalized claims of anger, frustration, humiliation, and betrayal); *Schandelmeier-Bartels,* 634 F.3d at 389 (plaintiff was "disturbed," "devastated," and "upset" by termination but provided no evidence of "lasting physical or emotional effects" and quickly found new employment); *Forshee,* 178 F.3d at 531 (no physical injury or treatment or corroborating evidence of distress; plaintiff secured new job almost immediately).

Further undermining his position, Faulk accuses Dimerco of cherry-picking cases while doing precisely that himself—selectively citing affirmances of high

emotional distress damage awards from courts across the country. (AB.41-42). But aside from *Bogle v. McClure,* 332 F.3d 1347 (11th Cir. 2003), which he concedes involved a "broader impact of race discrimination" affecting career librarians (AB.41), his authorities consist of non-binding state court decisions and federal cases from other circuits with highly distinguishable facts. *See* AB.41-42.

Ultimately, the district court failed to perform the rigorous review required under *Akouri.* Given the court's inconsistent findings and the absence of concrete evidence, Faulk's emotional distress award cannot stand. Accordingly, the award should be vacated entirely or at least substantially reduced.

### B. The Exorbitant Punitive Damage Award Is Unconstitutional

Faulk's efforts to justify his $3,000,000 punitive award, which violated the due process clause, fare no better. He incorrectly claims that the constitutionality of that award is reviewed for abuse of discretion. (AB.12, 49). The court itself treated Dimerco's due process challenge to the punitive award as a Rule 50 motion, not Rule 59, and recognized it was "not really a remittitur at all." (DE#220:39-40 n.6). Under *Lambert v. Fulton County, Georgia,* 253 F.3d 588, 597 (11th Cir. 2001), review is *de novo.* Thus, the court's due process ruling is not entitled to deference.

1. The *Gore* Factors Show Low Reprehensibility

Faulk concedes the second *Gore* factor cuts against reprehensibility but challenges Dimerco's analysis of the other four factors, accusing Dimerco of disregarding this Court's law. Faulk is wrong on all fronts.

On the first *Gore* factor, Faulk cites *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1283 (11th Cir. 2008), and *Williams v. First Advantage LNS Screening Solutions, Inc.,* 947 F.3d 735, 751 (11th Cir. 2020), to argue generally that emotional harm satisfies the "physical harm" element. (AB.44). But unlike the plaintiffs in those cases, who suffered emotional *and* physical harm or symptoms, *Id.* at 751; *Goldsmith,* 513 F.3d at 1283, Faulk showed no physical symptoms, sought no treatment, and offered no corroborating evidence. Thus, the court clearly erred in treating this factor as favoring Faulk.

As for the third factor, financial vulnerability, Faulk does not claim to have suffered any financial hardship from Dimerco's conduct—because he did not. The court even found he was not "financially vulnerable," but still paradoxically concluded, relying on *Sepulveda v. Burnside,* 432 F. App'x 860 (11th Cir. 2011), that he was "vulnerable" based on Dimerco's supposed "ability to take advantage of him." (DE#220:44). Notably, Faulk doesn't attempt to defend the court's misplaced reliance on *Sepulveda*, which was distinguished in Dimerco's brief. (IB.50). Instead, he relies on *Myers v. Central Florida Investments, Inc.,* 592 F.3d 1201 (11th Cir.

2010), a workplace sexual misconduct case, which is also entirely distinguishable. There, the plaintiff was an employee subject to repeated sexual touching by her boss, who controlled her earnings. *Id.* at 1219-20. Here, Faulk never worked for Dimerco, never met its former president, and had no relationship creating economic dependence; he also quickly secured other employment. Therefore, this factor weighed in favor of Dimerco, not Faulk.

On the fourth factor—whether the conduct was repeated—Faulk claims Dimerco had a discriminatory plan and policy, citing its selection of Tanner Thibodeaux over him. (AB.45). But Dimerco did not hire Thibodeaux *instead* of Faulk; Thibodeaux was hired for a different account executive position, in a different office, by a different team, and at a lower salary. (DE#164:1-1; DE#164-9:1-3; DE#168:91-92). Unlike Faulk, who did nothing when told his conditional job offer was being revoked based on his criminal history, Thibodeaux explained to Dimerco the circumstances of his criminal activity, which stemmed from a single youthful incident. (DE#169-2:223-24). Additionally, Faulk readily concedes that the Dimerco Atlanta team that offered him the job showed no bias. (AB.46). Dimerco's anti-discrimination policies further undermine any suggestion of systemic misconduct. (DE#164-43:7). At most, the conduct was isolated to one executive, not a company-wide practice. Consequently, this factor weighs in Dimerco's favor or, at most, is neutral.

On the fifth factor, Faulk wrongly accuses Dimerco of rejecting the Seventh Amendment simply for challenging whether the facts support a finding of "malice." (AB.47). In reality, Dimerco contested only the court's legal conclusion—not the jury's factual determinations. (IB.51-52). The evidence Faulk cites to demonstrate malice actually connect Liou's hiring preferences to Dimerco's customer base and marketing strategy, not to racial bias. (AB.47-48; DE#168:63-69). Faulk also distorts Chou's conduct, claiming she attempted to conceal wrongdoing solely because she assisted Liou in rewording a proposed email to Howard. (AB.48). In truth, Chou neither endorsed any alleged discriminatory bias nor participated in or covered up any purported discriminatory conduct; rather, she acted prudently to prevent the transmission of a message that did not comply with company policy to reduce potential liability for the company. (USCA11#23:46-47).[6] Thus, while Dimerco's alleged actions were not entirely inadvertent, the evidence shows they were motivated by business strategy rather than malice, making the fifth factor neutral.

Accordingly, because the record demonstrates that most of the *Gore* factors weigh against reprehensibility or are neutral, the court's finding that Dimerco's

---

[6] In other parts of his brief, Faulk asserts that Chou somehow enabled the discrimination against him based on her generalization that Chinese salespeople are more likely than African Americans to know how a shipment of ginseng should be handled (AB.4, 43; USCA11#23:50-51). While perhaps inartful, it was an offhand comment (in a non-native language) that was not malicious and has nothing to do with Faulk's contention that Dimerco discriminated against him by preferring white salespeople.

conduct was sufficiently reprehensible to warrant punitive damages was clear error. *Williams,* 947 F.3d at 751. Consequently, the $3,000,000 award to Faulk should be vacated.

2. The Punitive-to-Compensatory Ratio is Too High

Even assuming some punitive damages were warranted, Faulk fails to justify the 7.69:1 ratio, which is grossly disproportionate. Citing *State Farm Mutual Auto Insurance Co. v. Campbell,* 538 U.S. 408 (2003), and wrongly invoking the court's discretion, *see supra* at 19, he argues that this ratio does not violate due process simply because it "falls within single digits" and the court called Dimerco's conduct "extreme." (AB.49, 50). This reasoning is fundamentally flawed.

Faulk largely disregards the fact that numerous post-*State Farm* race discrimination cases have held that a 1:1 ratio is the "outermost" constitutional limit where, as here, the compensatory award is "substantial"—even in cases of ongoing and egregious mistreatment of employees. (*See* IB.53-54). Faulk's attempt to distinguish those cases through cursory, incomplete descriptions and by asserting that the misconduct here was somehow more severe is unpersuasive. (AB.50-51). As Dimerco has noted—and Faulk has failed to refute—the defendants in those cases subjected *actual* employees to sustained and extreme mistreatment, resulting in far greater harm than experienced by Faulk—a job *applicant,* not an employee, whose conditional offer was rescinded before he worked a single day. (*See* IB.53-54). *See*

*Gore,* 517 U.S. at 580 (second indicium of excessive punitive damages award is its ratio to actual harm inflicted on plaintiff).

Faulk's characterization of *Williams v. ConAgra Poultry Co.,* 378 F.3d 790 (8th Cir. 2004), and *Copley v. BAX Global, Inc.,* 97 F. Supp. 2d 1164 (S.D. Fla. 2000), as involving "relatively benign" and "relatively commonplace" discrimination (AB.52, 53) is remarkable given the stark factual differences between those cases and this one. In *ConAgra,* a long-term employee endured years of racial harassment and was ultimately discharged for opposing the discrimination he faced. His experience included persistent verbal abuse by his supervisor, racially derogatory remarks from coworkers and managers (including his supervisor's threat to "fire [his] black ass"), and consistent disparate treatment in work assignments, evaluations and discipline. 378 F.3d at 795, 798. Such conduct was anything but "minor," as Faulk suggests, and, importantly, it occurred over an extended period—unlike the single, isolated act Faulk alleges as a job applicant rather than as an employee. (AB.53). Despite this severity of the misconduct in *ConAgra*, the Eight Circuit concluded that "due process require[d]" a substantial reduction of the punitive damage award from $6,063,750 to $600,000. *Id.* at 799.

Similarly, in *Copley,* the court found the employer's abrupt termination of a long-serving white employee—simply because he was not Hispanic, and under the false pretense of poor performance—was "highly reprehensible." 97 F. Supp. 2d at

1173. The employer's conduct was deliberate: it had pre-selected a Hispanic replacement and intentionally concealed its plan. *Id.* at 1168. Nevertheless, the court reduced the punitive damages award from $1,000,000 to $350,000. *Id.* at 1174.

Faulk's attempt to distinguish these cases by noting that both involved reduced punitive awards "exceed[ing] $300,000" (AB.53)—misses the critical point. The punitive award here was not $300,000—it was $3,000,000. The reduced awards in *ConAgra* ($600,000) and *Copley* ($350,000) were approximately five and nearly ten times *lower,* respectively, than the award Faulk received—despite the far more egregious misconduct and substantial harm those plaintiffs suffered. In making this argument, Faulk inadvertently reinforces the need for this Court to intervene and either adjust the award to align with established precedent or grant a new trial.

Faulk also avoids, and thereby concedes, that nearly all of his $390,000 compensatory award is for emotional distress, a category of damages carrying a "punitive element." *Williams,* 947 F.3d at 765 n.23 (cleaned up). This further highlights the unconstitutionality of the nearly 8:1 ratio. Faulk also ignores Dimerco's argument that, even if the emotional distress award were reduced, the constitutional limit would still fall in the 1:1 to 2:1 range under this Court's reasoning in *Williams*. (IB.54-55). Just as the district court gave the ratio only cursory treatment in its flawed analysis (DE#220:49-50), Faulk entirely disregards

the central holding in *Williams* that no ratio exceeding 4:1 was constitutional on the facts of that case. *Id.* at 767. His silence on this point speaks volumes.

Beyond the excessive ratio, Faulk cannot overcome the fact that the $3,000,000 punitive award far exceeds those upheld in cases with far more severe and prolonged misconduct against actual employees who suffered substantially greater harm. *See* IB.55-56. His broad-brush attempt to distinguish those cases by claiming that none involved a "detailed, systematic plan of discrimination" and all reflect "practically benign" discrimination (AB.53-54) is unsupported. And his reliance on a single district court case from California, *Chopourian v. Catholic Healthcare West,* 2012 WL 1551728 (E.D. Cal. Apr. 30, 2012), is similarly misplaced. (AB.54). There, the court addressed only the entry of judgment on a jury verdict for a wide range of torts committed against the employee, including hostile work environment, retaliation, defamation and intentional interference with prospective economic advantage. *Id.* at *1. The court offered no details about the facts underlying the employee's claims; without any factual basis, the case provides no meaningful support for upholding Faulk's award—particularly given that he was not even an employee.

As this Court emphasized in *Williams,* it is the reviewing court's duty in evaluating a due process challenge "to eyeball the punitive damages award" and, after weighing the egregiousness of the misconduct and harm it caused, decide

whether it is "grossly excessive." 947 F.3d at 762. *See also State Farm,* 538 U.S. at 426 (reviewing court must ensure punishment "is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered"). A punitive award may be "so out of whack that it screams a violation of due process." *Williams,* 947 F.3d at 762. That is precisely the case here.

Dimerco does not minimize the seriousness of the alleged conduct. However, the conduct described is not so egregious—nor is Faulk's alleged harm so severe—as to warrant a grossly excessive $3,000,000 punitive award. The jury already awarded Faulk $390,000 in compensatory damages based on Dimerco's withdrawal of a conditional job offer. Adding $3,000,000 to that substantial compensatory award results in a "startling amount of money" exceeding constitutional limits. *Id.* at 765. A reduction of the punitive award is therefore appropriate. *See id.* at 765-66 (reducing $3,300,0000 punitive award to $1,000,000 where job applicant received $250,000 in compensatory damages, including $172,000 for emotional distress).

3. <u>The Available Civil Penalties Highlight the Unconstitutional Excessiveness of Faulk's Award</u>

Again distorting Dimerco's argument, Faulk claims Dimerco asserted that the Title VII damages cap "should be applied" to Faulk's Section 1981 claim. (AB.52). Rather, Dimerco merely noted that courts in Section 1981 cases have often "*compared*" punitive damage awards to Title VII caps as a useful benchmark, as the Supreme Court has instructed. (IB.57) (emphasis added). *See State Farm,* 538 U.S.

at 428 (third *Gore* guidepost is disparity between "punitive damages award and the 'civil penalties authorized or imposed in comparable cases'") (quoting *Gore,* 517 U.S. at 575). In this case, such a comparison serves as a third, independent indicator of the gross excessiveness of Faulk's $3,000,000 award, which is 30 times the $100,000 statutory limitation applicable to a company Dimerco's size. *See* 42 U.S.C. § 1981a(b)(3)(B) ($100,000 damage limit for company with 100-201 employees).

Faulk's reliance on selective quotes from *ConAgra* and *Copley* is misleading. (AB.52). Both cases acknowledge that Title VII caps, while not binding in Section 1981 cases, can serve as a useful guide in assessing whether a punitive award is constitutionally excessive. *ConAgra* noted these caps offer a rough estimate of "retributive sanctions," 378 F.3d at 798, and *Copley* found they serve as a "barometer" for measuring excessiveness. 97 F. Supp. 2d at 1173.

In sum, under the *Gore* guideposts, Faulk's $3,000,000 punitive damage award is grossly excessive and therefore unconstitutional. Dimerco maintains that no punitive damages are legally justified; however, if the Court concludes otherwise, due process requires that the award be reduced to a 1:1—or at most 2:1— ratio. Accordingly, the punitive damage award should be eliminated or, at a minimum, reduced to a constitutionally permissible amount.

## V. FAULK'S ATTORNEYS' FEE AWARD SHOULD BE VACATED

Faulk does not dispute that, if the Court reverses the underlying judgment—which it should—the attorneys' fee judgment should likewise be reversed. (AB.16).

## CONCLUSION

For the foregoing reasons and those set forth in Dimerco's initial brief, this Court should eliminate Faulk's emotional distress award or reduce it to an amount consistent with the record evidence, and vacate his punitive damage award or reduce it to a constitutionally permissible level. Alternatively, the Court should reverse the district court's amended final judgment and attorneys' fee judgment and remand for a new trial on all issues, or, at a minimum, on damages alone.

Dated: May 2, 2025

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
Cynthia G. Burnside
Georgia Bar No. 097107
cynthia.burnside@hklaw.com
Nicholas R. Boyd
Georgia Bar No. 849842
nicholas.boyd@hklaw.com
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
T: (404) 817-8500/F: (404) 881-0470

**HOLLAND & KNIGHT LLP**

By: */s/ Ilene L. Pabian*
Ilene L. Pabian
Florida Bar No. 62499
ilene.pabian@hklaw.com
701 Brickell Ave., Suite 3300
Miami, FL 33131
T: (305) 374-8500/F: (305) 789-7799

***Attorneys for Appellant Dimerco Express (USA) Corp.***

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains 6,419 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Ilene L. Pabian*
Ilene L. Pabian

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, I electronically filed the foregoing with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Ilene L. Pabian*
Ilene L. Pabian